THE EVANSVILLE, INDIANAPOLIS AND CLEVELAND STRAIGHT LINE RAILROAD COMPANY *v.* SHEARER.

A person subscribing to the capital-stock of a corporation conditionally, is not to be considered a stockholder, or as liable on the subscription, until the company has performed the condition upon which his undertaking depends. When that is done, he becomes a stockholder by force of the agreement of the parties, and the subscription becomes absolute.

Parol evidence is admissible to give effect to a written instrument, by applying

it to the subject-matter, by proving the circumstances under which it was made, whenever without the aid of such evidence the application could not be made in the particular case.

But such evidence is not admissible where there is no uncertainty in the instrument, especially if it contradict the terms of the instrument itself.

Evidence not pertinent to the issue is inadmissible.

May Term, 1858.

THE EVANS-
VILLE, &C.,
RAILR'D CO.
v.
SHEARER.

APPEAL from the *Jefferson* Circuit Court.

Friday,
May 28.

DAVISON, J.—The railroad company sued *Shearer* upon an instrument of writing which is as follows:

" The undersigned subscribed to the capital-stock of the *Evansville, Indianapolis and Cleveland Straight Line Railroad Company*, the amounts and lands attached to our names, upon the express condition that the road shall be permanently located on the east side of *White River*, within one mile of the road run between *Indianapolis* and *Spencer*. Cash stock will be payable, not exceeding ten per cent. every ninety days, at the requisition of the board. Lands may be taken within ten miles of the line, to be appraised as per by-laws. August 11, 1853. [ Signed, ] *William Shearer*. (If *Martinsville* be made a point) 20 shares."

The complaint avers that the shares subscribed were each 50 dollars, amounting in the aggregate to 1,000 dollars; and that the company's board of directors, at their session on the 12th of *May*, 1854, by resolve, required ten per cent. of all cash subscriptions to the capital-stock to be paid each ninety days thereafter, of which the defendant had due notice; that the plaintiff has complied with all the conditions of the subscription on her part to be performed, and that said subscription remains due and unpaid, &c.

The defendant answered, 1. By a general denial. 2. That the railroad was not, at the commencement of this suit, permanently located on the east side of *White River*, within one mile of the line run between *Indianapolis* and *Spencer*. 3. Denying that the plaintiff has located her road permanently on the east side of *White River*, within one mile of the line between *Indianapolis* and *Spencer*, making *Martinsville* a point, and averring that after he had made the subscription, namely, on the 10th of *May*, 1855, the plain-

May Term,
1858.

THE EVANS-
VILLE, &C.,
RAILR'D CO.
v.
SHEARER.

tiff, by the act, preamble and resolution of her board of directors, they having power to do so, permanently located the road on the west side of *White River*, by crossing said river below *Martinsville*, and running on the west side thereof, from such crossing to the town of *Spencer*, making a distance of twenty-five miles, and more than one mile from the line run between *Indianapolis* and *Spencer*,—whereby the defendant is discharged from his liability on his subscription, &c.

To the second paragraph, the plaintiff replied that the road was, at the commencement of the suit, permanently located on the east side of *White River*, and *Martinsville* was made a point. And to the third, she replied by a general denial.

The issues thus made were found for the defendant; and the Court, having refused a new trial, rendered judgment on the verdict.

By the evidence introduced by the plaintiff, it was shown that after the date of the subscription, on the 12th of *October*, 1853, her board of directors, then in session, resolved, " That the road of·this company be, and the same is hereby, permanently located on the following line, as reported by the engineer, that is to say: on the line from *Indianapolis* down on the east side of *White River*, on the most eligible route to *Evansville*, inclusive;" that afterwards, on the 4th of *November*, 1854, the board further resolved, "that the road be, and the same is hereby, permanently located from the south line of the corporation of *Indianapolis*, on the west side of the *Bluff* road, and on the line run by the chief engineer, on the east side of *White River*, to *Martinsville*, inclusive."

And *Oliver H. Smith*, being called by the plaintiff, testified that the company was organized under the general railroad law of the state, and he was then her president; that shares of stock are 50 dollars each, and that the road in question has been permanently located within one. mile ·of the line run between *Indianapolis* and *Spencer*, and *Martinsville* has been made a point, as provided in the subscription.

The plaintiff having rested, the defendant, in support of his answer, gave in evidence the following preamble and resolution of the same board of directors, passed *May* 10th, 1855, namely:

" Whereas, the board at its last session, located the road from *Martinsville* to *Spencer*, crossing *White River* below *Martinsville*, and running on the west side of the river, by *Gosport*, to *Spencer*, upon condition that the citizens of *Gosport* and *Spencer* would subscribe to the capital-stock of the company, within ninety days thereafter, a sum sufficient, in the opinion of her president, to justify such location; and whereas, the conditional stock taken within the time, not being in his opinion sufficient, and a part of said citizens now having presented to this board a subscription of 58,320 dollars upon the last-named condition; therefore, *Resolved*, that said stock be accepted, and that the railroad be, and the same is hereby, permanently located from the point of intersection of the line from *Indianapolis* at *Martinsville* to *Spencer*, by crossing *White River* below *Martinsville*, and running on the west side of the river from the crossing to *Spencer;* and that the engineer is hereby required, when so directed by the president, to locate and plat that part of the road."

The above was all the evidence touching the main question in the case, namely, whether the plaintiff, prior to the institution of her suit, had, in accordance with the agreement, permanently located her road " on the east side of *White River*, within one mile of the road run between *Indianapolis* and *Spencer*," having made *Martinsville* a point.

A late writer on railroad law says: " Conditional subscriptions of stock, in the absence of any special prohibition, have been sustained as authorized, and not against public policy. The parties subscribing to them are not to be considered stockholders until the company has performed the condition upon which the undertaking depends; and when that is done, they become stockholders by force of the agreement of the parties, and the subscription becomes absolute." Pierce on American Railroad Law, pp. 70, 71.

This exposition being correct, and we think it is, the de-

May Term,
1858.

THE EVANS-
VILLE, &C.,
RAILR'D CO.
v.
SHEARER.

fendant, in the case before us, could not be a stockholder, and consequently, is not liable on the agreement until the plaintiff has performed the conditions upon which the defendant subscribed; and whether in this instance they have been performed, was a pure question of fact, which the jury, in view of the evidence, have settled, and we are not inclined to disturb their conclusion, unless the rulings of the Court, which we will proceed to notice, involve error sufficient to reverse the judgment.

The plaintiff offered to prove by *Oliver H. Smith*, a witness on the stand, first, that the defendant before he subscribed, resided and was a property-holder in *Martinsville*, and that there was a question between the people on the west side of *White River*, between *Indianapolis* and *Martinsville*, and those on the east side, whether the road should not be changed so as to run on the west side of the river, not making *Martinsville* a point; and that the subscription of the defendant was made to induce the location on the east side permanently, and that *Martinsville*, where the defendant resided, should be made a point. Secondly. That the road has not been run and located, and the crossing of the river fixed, between *Martinsville* and *Spencer*, by the engineer, under the resolution of *May* 10; and that the road may, and probably will, run on the east side of the river to *Spencer* from *Martinsville*, before crossing to the west side, and within one mile of the road run between *Indianapolis* and *Spencer*.

The evidence thus offered was refused, and its refusal is assigned for error. As the subscription, so far as it relates to the location of the road between the points named, the side of the river on which it was to run, and the point to be made on the line, is not at all ambiguous, we are unable to perceive any legal ground upon which the first branch of the proposed evidence can be admitted. Parol evidence is admissible to give effect to a written instrument, by applying it to the subject-matter by proving the circumstances under which it was made, whenever without the aid of such evidence the application could not be made in the particular case. 13 Pet. 89. But here no such aid

May Term,
1858.

THE EVANS-
VILLE, &c.,
RAILR'D CO.
v.
SHEARER.

is required.   The instrument itself, when applied to the subject-matter to which it relates, admits of no uncertainty. It says "that the road shall be permanently located on the east side of *White River*, within one mile of the road run between *Indianapolis* and *Spencer*."   Hence, extrinsic evidence tending to show that its location on that side was to extend only to *Martinsville*, would plainly contradict the instrument, and could not, therefore, give it effect.   Nor do the facts that *Spencer* is on the west side of the river, and that the road, in order to reach that point, must cross the river, produce any uncertainty in the import of the agreement; because it was to be located within one mile of a road previously run, and consequently, was intended to cross the river not more than one mile distant from the point where the previous road crossed it.

The second branch of the refused evidence, is not pertinent to the issues.   Proof that the engineer had not acted under the resolution of *May*, 1855, or that the road may, and probably will, run on the east side of the river, from *Martinsville* to *Spencer*, in no respect tends to prove that the defendant has performed her engagement.   Indeed, such evidence, if admitted, would induce the conclusion that there is as yet no permanent location of the road.   Its rejection could not, therefore, injure the plaintiff.

As we have seen, the resolution of *October*, 1853, located the road on the east side of the river; and had it been shown that that location touched at *Martinsville*, and was within one mile of the road previously run, it would have fulfilled the contract.   But the inquiry is, did the road, at the commencement of this suit, stand permanently located, as required by the subscription?   If it did not, the action cannot be sustained.   In connection with this, we are led to notice the resolution of *May*, 1855.   Under the statute to which reference has been made, the company, through her board of directors, had full power to alter the line of road between *Martinsville* and *Spencer*.   Now did the resolution produce such alteration?   It declares that the railroad be, and the same is hereby, permanently located from

the point, &c., at *Martinsville* to *Spencer*, by crossing *White River* below *Martinsville*, and running on the west side of the river to *Spencer*. It is true, the distance below the former point is not stated; but the river was to be crossed, and the road was to run on the west side. Hence, it is evident that the resolution did not intend to locate it on the east side, to a point opposite *Spencer*. Indeed, the reasonable construction is, that the road should cross the river not only below *Martinsville*, but as near that place as such crossing could be conveniently effected. It follows that the prior location was in effect annulled by the action of the board in *May*, 1855; and that when this suit was brought the road was permanently located on the west side of the river.

It is needless to inquire what would have been the result, had the plaintiff instituted her suit subsequently to the resolution of 1853, and prior to that of 1855; because, as the case now stands, the location on the east side of the river must be considered as having been temporary and not permanent.

The plaintiff, under the statute, had power to change the location; but the exercise of it in this instance is in conflict with her agreement, and evinces a decided purpose on her part not to perform its conditions. This case stands upon the same ground on which it would have stood had no location ever been made. 7 Blackf. 408.—4 Ind. R. 417.

True, where a subscription of stock in a railroad company is unconditional, the subscriber at once becomes a stockholder, and the company may, without his assent, alter the location of the road, provided the change made does not materially prejudice his rights; but here, the subscription itself binds the plaintiff to make a specified location, and, in effect, stipulates that when made, she will not exercise the power of alteration.

Various errors relative to instructions refused, and to the charge given, are assigned upon the record; but they will not be further noticed, because the verdict is right on the evidence. Indeed, the resolution of *May*, 1855, conclu-

sively proves, that the conditions upon which the defendant made his subscriptions remain unperformed.

May Term, 1858.

*Per Curiam.*—The judgment is affirmed with costs.

*O. H. Smith*, for the appellants.

*W. M. Dunn* and *A. W. Hendricks*, for the appellee.