*A. Steele* and *H. D. Thompson*, for the appellee.

May Term, 1856.

FISHER
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

---

FISHER *v.* THE EVANSVILLE AND CRAWFORDSVILLE RAIL-
ROAD COMPANY.

It appeared from the evidence in the present case, that the *Wabash Railroad Company* and the *Evansville and Illinois Railroad Company* had consolidated their charters, and had assumed the name of the *Evansville and Crawfordsville Railroad Company*, and that the latter company had located its road within half a mile of the public square of *Rockville*, in *Parke* county, before the expiration of eighteen months from *November* 6, 1852.

Suit upon a subscription of stock to a railroad company, whereby the subscribers promised to pay the sum, &c., for each share subscribed, "in such manner, and in such proportion, and at such times," as the company should direct. The answer admitted the subscription as alleged in the complaint, but denied the other averments.

*Held*, that personal notice of a call for stock was not requisite.

*Held*, also, that it was not necessary to give the book containing the defendant's subscription in evidence.

The charter of a railroad company prescribed a form in which subscriptions of stock should be taken, and also provided that the company should have all powers incident to a corporation at common law. A subscription, after pursuing the language of the form given, contained also additional stipulations, not inconsistent with those prescribed, and which by the common law it would have been competent for the parties to make. *Held*, that the subscription was valid.

The 26th and 27th sections of the charter of the *Wabash Railroad Company*, authorized that company and the *Evansville and Illinois Railroad Company*, so far as the state was concerned, to consolidate their charters; and such consolidation was only dependent upon the consent of the stockholders.

By an act of 1853, the consolidation of the *Wabash Railroad Company* and the

May Term,
1856.

FISHER
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

Tuesday,
May 27.

*Evansville and Illinois Railroad Company* was legalized, and the name of the *Evansville and Crawfordsville Railroad Company* was given to the new company.

APPEAL from the *Parke* Circuit Court.

PERKINS, J.—The *Evansville and Crawfordsville Railroad Company* sued *Fisher*, on the following subscription:

" We, the undersigned, promise to pay the sum of fifty dollars for each share of stock set opposite to our names, in such manner, and in such proportions, and at such times, as the president and directors of the *Wabash Railroad Company* may direct. And we do severally consent and agree that said company may, at any time, consolidate their charter with the charter of the *Evansville and Illinois*, or *Evansville and Vincennes Railroad Company;* and that our subscription hereto shall be good in favor of the union company, under whatever name they may assume: *Provided,* that said railroad shall be finally and permanently located from *Terre-Haute* to *Crawfordsville*, within eighteen months from this date; and that said road shall be located within one-half mile of the public square of *Rockville, Parke* county, *Indiana;* and that all stock hereto subscribed be applied to the construction of said road, between *Terre-Haute* and *Crawfordsville. November* 6, 1852. *Alfred Fisher.*—Number of shares, 4."

The complaint alleges, that the *Wabash Railroad Company* had consolidated with the *Evansville and Illinois Railroad Company;* that afterward, on the 4th of *March*, 1853, by virtue of an act of our legislature of that date, the name of the consolidated company was changed to that of the *Evansville and Crawfordsville Railroad Company;* that said road was finally and permanently located from *Terre-Haute* to *Crawfordsville*, within half a mile of said public square, within eighteen months from the date of the subscription; and that the appellee had "made all the regular and legal assessments and calls on said defendant for his stock," of which he had notice.

The answer, admitting the signing of the paper sued on, denies all the other allegations in the complaint.

There was a trial by the Court. The issues were found

for the appellee.  The damages were assessed at 207 dollars.

May Term,
1856.

FISHER
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

A motion for a new trial, on the ground of the admission of improper evidence, and because the finding was contrary to law and the evidence, was overruled.  Final judgment for the appellee.

In the progress of the trial, exceptions were taken to the admission of certain evidence, and a bill of exceptions, on the ground of the ruling on the motion for a new trial, contains all the evidence.

*Fisher* appeals to this Court, and assigns several errors, which it is not necessary here to repeat.

Counsel insist that the judgment below should be reversed—

1. Because it does not appear that the road had been located within half a mile of the public square of *Rockville*.

2. Because it does not appear that the roads named had consolidated.

3. Because sufficient notice had not been given of the call for assessments.

4. Because the subscription of stock was not offered in evidence.

5. Because the subscription was not in conformity to the statute.  And, finally,

6. Because the companies named could not consolidate.

The manner in which the location was to be made and evidenced, was specified in the charter.

"SEC. 11.  The president and directors aforesaid shall cause such examination and survey for the said railroad to be made, as may be necessary to the selection of the most advantageous line, location, course or way for the said road, on the route set forth in the 2d section of this act, and shall, after such examination and survey be made, select, and by certificates under the hands and seals, or under the hands and seals of a majority of them, designate the line [of] location, course or way, which they, or a majority of them shall deem most suitable and advantageous for said road, a copy of which certificate shall be filed in the clerk's office of each county through which said road

May Term,
1856.

FISHER
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.

shall pass, and be recorded and preserved in said clerk's office at the expense of said corporation, and on said location, course or way, the corporation shall construct, erect, build, and make the railroad contemplated by this act, unless the said corporation shall afterwards find it necessary to change or alter the same.

"SEC. 12. When the route, line, location, course or way of the said road, or any division, portion or section thereof, shall be determined upon as provided for in the preceding section, it shall be lawful for the said company, by its officers, agents, engineers, superintendents, contractors and workmen, to enter on the said line [or] location of the road, and to erect embankments, bridges, viaducts, culverts, and all other works necessary, to lay rails thereon, and to do all other things which shall be suitable and necessary for the effectual completion of the said road," &c.

It appears by the record that surveys had been made, a route selected by resolution of the board of directors, *September* 5th, 1853, and designated by an instrument under seal, but without date, signed by the president and directors, which was filed in the clerk's office of *Parke* county, *May* 29, 1854, being five months before this suit was instituted. And it was proved by parol that the line designated ran within half a mile of the public square of *Parke* county, and had been located within eighteen months of the date of the subscription sued on.

On the second point, the consolidation seems to have taken place by unanimous resolutions of the boards of directors of the respective companies, and *to* have been followed by subsequent action, pursuant to the terms specified, of the consolidated company.

The third point is settled by the case of *Ross* v. *The Lafayette and Indianapolis Railroad Company*, 6 Ind. R. 297, where it is decided that personal notice of a call for stock, in a case like the present, is not required, and seems to be doubted whether any is.

In point of time, the notice in the present case, by publication, was twenty days.

On the fourth point, we are of opinion it was not neces-

sary to give the book containing the subscription of stock in evidence.   The answer admitted the subscription as set out in the complaint.    Under the old practice, it is true, in a suit upon a promissory note, it was necessary, upon the trial of the general issue not sworn to, to produce the note in evidence, and leave it with the papers in the cause, to be surrendered on payment; and perhaps it may be so under the new.    When a man pays a promissory note, he is entitled to a surrender of it for destruction.    Not so on the payment of an instalment of stock subscribed to a corporation.

The fifth objection is, that the subscription was not conformable to the statute, which provided that in each of the stock books opened to receive subscriptions, there should be written:

" We, the undersigned, promise to pay the sum of fifty dollars for each share of stock set opposite to our names, in such manner and proportions and at such times as the president and directors of the *Wabash Railroad Company* may direct.    Witness our hands, this ―― day of ――."

The statute also provided that the corporation should have all powers "incident to corporations at common law," &c.

The "subscription," in this case, contained the words required by the statute.   It also contained some additional stipulations, not inconsistent with those words, which it was competent for the parties to enter into under the common law power to contract.   If those stipulations had been upon a separate paper, they could not have been objected to.   Why should they, then, when upon the same paper?   It can not be supposed that the company was to be restricted, as to its power of contracting, to the one contract contained in the statute.   The statute does not so read.   We think the subscription was valid.

The remaining question is upon the power to consolidate.

In the charter of the *Evansville and Illinois Railroad Company*, the state reserved the right to permit other companies to connect with that road, without specifying the

May Term,
1856.

FISHER
v.
THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD Co.

character of the connection, and the charter of the *Wabash Railroad Company* contains the following sections:

" SEC. 26. And whereas, by [the] 35th section of the act to incorporate the *Evansville and Illinois Railroad Company*, approved *January* 2, 1849, it is provided as follows: ' That full right and privilege is hereby reserved to the citizens of this state and the state of *Illinois*, or any company hereafter to be incorporated under the authority of either of said states, to connect with the said railroad hereby provided for, at such convenient point as may be selected by said company last mentioned, provided said connection shall be formed with said railroad on terms usual in such cases; and that in forming such connection no injury shall be done to the works of the company hereby incorporated.' Therefore, be it enacted, that it shall be lawful for the company hereby incorporated to construct and connect their railroad herein contemplated to be made with the said railroad of the said *Evansville and Illinois Railroad Company*, at such points in this state, north on the said last-mentioned road, as shall have been constructed at the time of the desired connection, and upon such terms and conditions as are in said 35th section of the said *Evansville and Illinois Railroad* charter provided.

" SEC. 27. And it is further enacted, that it shall be lawful for the company hereby incorporated, and the said *Evansville and Illinois Railroad Company*, or the *Evansville and Vincennes Railroad Company*, to consolidate their said charters, and may become one company under the several acts of the incorporation of said companies; and such company, may, and shall in such case, have all the rights, privileges and extensions granted in the corporation charters of the incorporation of said companies, or the amendments thereto; and it shall and may be lawful for said company, when so consolidated, to assume such name as the directors thereof may direct; and shall thereafter by such name be known. Provided, that in case of such consolidation, there shall never be more than thirteen directors of said company."

These sections, we think, authorized the companies to

consolidate, so far as the state, the creator of them, was concerned. In other words, they expressed the consent of the state to such an act. With the consent of the stockholders, therefore, it could take place. Their subscription of stock under such charters would, of itself, probably, be a sufficient consent. Here, however, the appellant gave his express consent. See *Carlisle* v. *The Terre-Haute and Richmond Railroad Company*, 6 Ind. R. 316.

It may be remarked that by act of the legislature, *March* 4, 1853, the acts of the companies in consolidating were legalized, and the name in which suit is brought given to the new company. Laws of 1853, p. 111.

*Per Curiam.*—The judgment is affirmed, with 10 per cent. damages and costs.

*E. S. Terry*, *D. McDonald* and *W. A. McKenzie*, for the appellant.

*J. P. Usher*, for the appellees.