## Smith and Others *v.* Allison and Another.

CONTRACT—LOCATION OF RAILROAD.—Where a subscription was made to the capital stock of a railroad company upon condition that the final location of the road should be upon a certain route, the permanent location of the road contemplated by the contract was held to be the adoption by the directors of the route mentioned.

APPEAL from the *Clay* Circuit Court.

FRAZER, J.—The appellants, who are the heirs at law of *Oliver H. Smith*, deceased, sued the appellee in ejectment. Answer: 1. General denial. 2. A counter-claim alleging, substantially, that in *April*, 1855, the defendant subscribed the land as stock in the *E. I. and C. Straight Line Railroad Company* for $10,000, upon condition that the final location of the railroad should cross *White* river near *Martinsville*, and run within one mile of *Gosport*, and continue down on the west side of the river to the town of *Spencer;* that afterward the agents of the company showed him a map, fraudulently published, representing a location according to the condition of his subscription, and the board of directors fraudulently passed a resolution falsely declaring

the road located there, and it was so represented to him repeatedly by the company's agents; that thereby he was afterward induced to convey the lands to the company; that various conveyances have since been made, until finally the lands were conveyed to *O. H. Smith*, who, with all intermediate purchasers, had notice, etc.; that the road has never been so permanently located; that since 1857 the company have ceased operations, and abandoned the entire enterprise, and become insolvent, and unable to locate the road according to the condition upon which the subscription was made; that, ascertaining that the condition had not been performed, *Allison* kept possession of the lands; that he brings the certificates of stock into court, and demands that the contract be canceled. He prays that his title be quieted; his deed to the company and the other deeds be canceled; and for general relief. Issues were made and tried, which resulted in a decree according to the prayer of the counter-claim.

The only question upon which we need to express an opinion is, does the evidence sustain the verdict?

*Allison's* subscription (and others, amounting to $58,320) was in writing, with the condition expressly stated therein, as alleged in the counter-claim. It was in that form offered to the board of directors, for the purpose of securing the permanent location of the railroad on the west side of the river through *Spencer*. The board accepted the subscription on the 10th of *May*, 1855, by adopting and entering upon their books a preamble and resolutions. The preamble states that, at a previous meeting, the board had located the road, as specified in the counter-claim, upon condition that certain citizens should subscribe to their capital stock a sufficient sum to justify it, which had not been done; but "a part of said citizens now having presented a subscription of $58,320, upon condition that said road shall be permanently located by crossing *White* river below *Martinsville*, and running on the west side to *Spencer*. Therefore, *resolved*, that said stock be accepted and entered

on the books of the company as absolute, and that the railroad of this company be and the same is hereby located permanently, etc., by crossing *White* river below *Martinsville*, and running on the west side of the river from the crossing to *Spencer;* and the engineers are hereby required, when so directed by the president, to locate and plat that part of the line as required by law."

The route specified in the resolution (waiving the condition to pass near *Gosport*) seems to have been satisfactory to *Allison*, and indeed no question is now made upon that subject. This action of the railroad company yet stands. It has not attempted to change it; there is no proof that it ever intended to change it. There is in the evidence nothing whatever justifying the slightest doubt of the purpose of the company to construct the road on the route indicated in the resolution; there is simply proof that it has not yet been surveyed and staked by engineers, and that it has not been constructed, and also some evidence indicating that the company is insolvent. But the condition of the subscription was not that the route should be surveyed and staked, nor that it should be actually constructed. The parties might have made such conditions, but they did not. Nor can it be held that either of these things is necessary to the permanent location of a railroad. A survey may or may not, owing to circumstances, be necessary to enable the directors to judge as to the most advantageous route, and to act understandingly in adopting a location. It is a necessary preliminary, however, to the appropriation of the right of way, under our statute, but even then it adds nothing to the permanency of the location; for after the map of the route has been filed, as the act requires, it is still in the power of the corporation to change the line. 1 R. S. 417. What, then, is to be understood as a "permanent location" of the route in this case? It does not mean that the construction of the road must be accomplished. This the appellee concedes, but argues that no location can be deemed permanent so long

as it *may* be lawfully changed. If both propositions be correct, then the condition means nothing at all.

We think it clear that the resolution of *May* 10, 1855, must be regarded as a permanent location of that part of the road, in view of all the evidence. Such is the proper interpretation of it, and its interpretation is a matter of law. Should we hold otherwise, it would be simply holding that the failure of the corporation to construct the road is a breach of the condition upon which the stock was subscribed. Should the road hereafter be built on a different route, of course the party would have his remedy.

This precise question was incidentally considered in *Shearer's case*, 10 Ind. 244; and in *Dunn's case*, 17 Ind. 603, it was discussed, but not decided, the point not being in judgment. In *Parker* v. *Thomas*, 19 Ind. 213, the very question, as we think, was before the court upon the sufficiency of a reply; and, though not elaborated by the learned judge, who delivered that opinion, it was decided, without hesitancy, as we decide it. There the answer alleged that the subscription was upon the condition precedent that the railroad (the *Fort Wayne and Southern*) should be "located" within one-fourth of a mile of *Westport*, and that the southern terminus of the road had been, by resolution, fixed at *Columbus*, thus rendering the performance of the condition impossible. The reply averred that afterward the board of directors, by resolution, rescinded this resolution, and *ordered that the road be located* on a line passing through *Westport* and terminating at *Jeffersonville*. The reply was held good. Upon the authority of this case, and after a careful consideration of the question for ourselves, we have come to the conclusion that the permanent location of the road contemplated by the contract must be held to mean the adoption by the directors of the route mentioned, and that until a different route is shown to have been afterward adopted, it can not be deemed that the condition has been broken.

The judgment is reversed with costs, and the cause remanded for a new trial.

*Smith & Mack* and *McDonald & Roache,* for appellant.

*W. M. Franklin,* for appellees.

Counsel for appellant argued: The location of a railroad route, under the statute, is the fixing upon a route by the board of directors. *Evansville, etc. Railroad Company* v. *Shearer,* 10 Ind. 244; *Parker* v. *Thomas,* 19 Ind. 213; *Hudson and Delaware Canal Company* v. *New York and Erie Railroad Company,* 9 Paige, 323.