*J. H. Vawter*, for appellant.

———◆———

PARKER *v.* THOMAS.

RAILROADS.—CONDITION AS TO LOCATION OF.—Suit upon notes executed to a railroad company, payable upon condition that said road should be located within one-fourth of a mile of the town of *W.*

*Held*, that a location, within the meaning of the condition, might be made by an actual survey of the line within the required distance and the adoption of that line as the final one by the board of directors, but that a survey was not necessary to such location.

*Held*, also, that the directors could make the location by a resolution of the board, the publication of maps, or by other acts manifesting a determination of the company to construct the road on such route.

*Held*, also, that it was not necessary, to constitute a location within the contract of subscription, that the route should have been staked and marked on the ground, in such a manner that its precise line could be found and identified.

APPEAL from the *Shelby* Common Pleas.

ELLIOTT, J.—This was an action by *Parker*, the appellant, against *Thomas*, on six several promissory notes, executed by the latter to the *Fort Wayne and Southern Railroad Co.*, and indorsed by the company to the plaintiff. The notes all bear date *December* 29th, 1853, and are payable, respect-

ively, at six, twelve, eighteen, twenty-four, thirty, and thirty-six months from date, each being for the sum of $64. The suit was commenced in *December*, 1857.

The defense set up in the answer is, that in *August*, 1853, and prior to the execution of the notes, the defendant made a conditional subscription to the stock of said railroad company, by subscribing the following written instrument, viz:

"We, the undersigned, promise to pay to the president and directors of the *Fort Wayne and Southern Railroad Co.*, $25 for each share of stock set opposite our names, as follows, to-wit: Four per cent. in sixty days, the balance in six semi-annual payments, provided that said road shall be located within one-fourth of a mile of the plot of the town of *Westport*, in *Decatur* county, *Indiana;* and when said road is so located, we authorize the agent of the company to transfer our names and stock into the regular stock books of said company.

[Signed]        "THOMAS D. THOMAS, 16 shares."

That the consideration for the execution of said agreement by the defendant was the location of said railroad within one-fourth of a mile of said town of *Westport*; that the defendant afterwards, at the request of said railroad company, and upon no new contract or consideration whatever, executed the notes sued on for the nominal value of said stock, payable in six semi-annual payments, according to the terms of said conditional contract of subscription, and that the railroad company had not complied with the condition and terms of said contract, by the location of said road within one-fourth of a mile of said town of *Westport*, though a reasonable time therefor had long since elapsed.

The reply is a general denial of the answer. The issue was tried by a jury. Verdict for the defendant. Motion for a new trial overruled, and judgment.

The causes assigned for a new trial, are:

"1. The verdict of the jury is contrary to the evidence.

"2. The verdict of the jury is contrary to law.

"3. The court erred in giving to the jury, on its own motion, charges one, two and three.

"4. The court erred in refusing to give to the jury charges numbered two, three and four, asked by the plaintiff.

"5. The court erred in permitting illegal evidence to be given to the jury over the plaintiff's objection."

The material questions discussed by the appellant's counsel will be disposed of in considering the first and third causes assigned for a new trial.

A bill of exceptions purports to contain all the evidence given to the jury. We will refer to so much of it as relates to the question of the location of the railroad within one-fourth of a mile of the plot of the town of *Westport*. The affirmative of the issue was with the defendant, and he gave in evidence the following preamble and resolution of the board of directors of the railroad company, in reference to the location of the road, adopted *September* 4th, 1858:

"WHEREAS, This company has always recognized the line as run by *E. W. Butler*, between *Tipton*, formerly called *North Vernon*, in *Jennings* county, and *Muncie*, in *Delaware* county, and the published map of *W. J. Holman*, as showing the location of the line of the *Fort Wayne and Southern Railroad*, from *Fort Wayne*, in *Allen* county, to *Jeffersonville*, in *Clark* county, *Indiana*:

"*Resolved*, That the adopted line of said road, as shown by the different surveys and estimates made, and the published map of the line, commencing at *Fort Wayne* and running thence south *via Bluffton, Matamoras, Hartford, Muncie, Newcastle, Rushville, Greensburgh, Westport, Brewersville, North Vernon*, or *Tipton*, near *Paris, Lexington, Charlestown* and *Jeffersonville*, is hereby fully adopted as the located line of said *Fort Wayne and Southern Railroad*."

The defendant also gave in evidence an agreement of the parties, by which it was agreed that said preamble and resolution, "as shown by the corporation record, may be used in evidence without objection on account of its date, subject

to the legitimate legal effect thereof by any counter or explanatory evidence that is legitimate."

He also gave in evidence the published map of *W. J. Holman*, referred to in said preamble and resolution of the board. It is a lithograph, and seems to have been prepared with much care and accuracy, and designed for public use. It was published in 1855, and purports to be "A section of *Colton's* large map of *Indiana*, with the *Fort Wayne and Southern Railroad* marked upon it as located: also, a map of the *United States*, showing the road and its connections," &c., and contains the names and residence of the directors and officers of the company for the year 1855. On that part of it representing a section of *Colton's* large map of the State, the entire line of the road from *Fort Wayne* to *Jeffersonville* is distinctly marked, showing that *Westport* is made a point in the located road.

Several witnesses were then examined on the part of the defendant, who testified that a survey of the road from *Muncie* to *North Vernon* had been made by Mr. *Butler*, an engineer in the employ of the railroad company, and also as to the location of certain stakes placed by him in making said survey in the vicinity of *Westport*.

It appears from their evidence that there is a public road running east and west, known as the *Columbus* road, which passes immediately on the south of *Westport*, and that the line run by *Butler* from *Greensburgh* struck said road sixty rods east of the town plat of *Westport*, while the line run by him from *Westport* to *Vernon* commenced on the *Columbus* road two rods west of *Westport*. They all, however, concur in the fact that both of said lines are within less than one-fourth of a mile of the plot of the town of *Westport*.

It appears from the evidence that *W. J. Holman* was the president and principal engineer of the company, and that the survey made by *Butler* was a preliminary one. It was commenced in *August*, 1853, and concluded before the execution of the notes in controversy, but after the defendant

had subscribed the stock on the conditional subscription. A report of that survey, made by *Butler* to the railroad company, was given in evidence by the plaintiff, from which the following extract is taken:

" Under your direction I proceeded on the 15th of *August* last, with a company organized for the purpose, to make a survey, commencing at *North Vernon,* in *Jennings* county, at a point five hundred feet west of the intersection of the *Ohio and Mississippi* and *Madison and Indianapolis Railroads,* at which point a curve of seven degrees east from the located line south was made, giving the course for the best crossing of said creek at *Brewersville,* a distance of six miles, three thousand four hundred and twenty feet, where a curve of fourteen degrees was necessary to give the course to *Westport,* which place was to be made a point. This tangent is twelve miles, one thousand three hundred and sixty feet long, where the course was to be changed to the east fifteen degrees, and the line continued to *Greensburgh.*"

The report contains a detailed estimate of the cost of constructing the road on the line so surveyed.

It is, we think, evident from the facts in the case, that the words " shall be located," &c., as used in the condition of the subscription to the stock of the company, signed by the defendant, have reference to the act of the company in determining to make *Westport* a point on their railroad, and not to the final staking off or marking the ground on which the road should be built. *Westport* was not made a point in the charter of the company. A line or route might be adopted which would not pass any where in the vicinity of that place, and hence the defendant, and others holding property there, or who were engaged in business at that point, subscribed to the stock of the company upon the condition that the road should be located within a fourth of a mile of the plot of the town. A " location," within the meaning of the agreement, might be made by an actual survey of the line within the required distance and the adoption of that line as the final one by

the board of directors. A survey, however, was not requisite to such location. The company having power under its charter to adopt the route, and no natural obstacle preventing its adoption, the board of directors of the company could so adopt it, or, in other words, make the location, by a resolution of the board, or by other acts manifesting a determination of the company to construct the road on such route.

Such was, in effect, the ruling of this court in this case, 19 Ind. 213, where the question arose on a replication, and is fully sustained by the case of *Smith* v. *Allison*, 23 Ind. 366. See, also, *The Evansville, Indianapolis, &c., Railroad Co.* v. *Dunn*, 17 Ind. 603, where the question is discussed.

Here, the evidence shows an actual survey of the line passing within the designated distance of *Westport*, and the report of that survey shows that *Westport* was made a point; following which, the chief engineer, who was also president of the company, prepared and published a map of the entire line of the road as located, which shows that *Westport* is a point on the located route. The publication of this map by the company was a clear recognition by it of the location of the line of the road as marked on said map; and the preamble and resolutions of the board of the 4th of *September*, 1858, given in evidence by the defendant, seem to put the question of the location, in accordance with the condition of the stock subscription, beyond controversy. True, this resolution was adopted after the commencement of this suit, but the defendant waived any objection to it on account of its date, and left it only to counter or explanatory evidence. Besides, it is expressly declared by the preamble that the company had always recognized the line as run by *E. W. Butler*, and the published map of *W. J. Holman*, as showing the location of the line of said road.

A bill of exceptions shows that the plaintiff offered in evidence the report of a locating committee of the company,

locating the road in the counties of *Decatur* and *Jennings*, and its adoption by the board of directors of the company, in *December*, 1853, which was excluded by the court, to which the plaintiff excepted, and assigns the ruling for error.

We do not see any reason for excluding the evidence; but the plaintiff failed to include the ruling in the reasons for a new trial. The question is not, therefore, properly raised, and we do not decide it.

The court, of its own accord, instructed the jury as follows:

"1. * * * If you find from the evidence that said company has marked and staked, or in any other way designated a route, which can be found and identified, and has, by resolution of said company, or other proper means, adopted said route, that in legal contemplation will amount to such a location as will be a compliance with the condition upon which said stock was subscribed: * * provided said route runs within one-fourth of a mile of the town of *Westport*.

"3. If you find that said company, by resolution of the board of directors, has adopted as the route of said road the survey made by *E. W. Butler*, and the line as laid down on a map made by *Colton* and adopted and approved by said company, and that there is a variance between said map and survey, such variance, if slight and unimportant, cannot affect the legality of the location, if the route can with certainty be ascertained; but if you find the variance is so great that it is doubtful or uncertain upon which one of two routes said road has been located, it would not, in my opinion, be a sufficient location."

The first charge assumes that to constitute a location of the road, within the contract of subscription, it must be staked or marked on the ground in such a manner that its precise line can be' found and identified. This, as we have seen, was not necessary, and, as applied to *Butler's* survey, was peculiarly calculated to mislead the

jury.   That was a preliminary survey of the line, made for the purpose of determining the propriety of making certain towns points on said road, among which was *Westport*, and for general information.   The evidence tended to show that the line so run from *Westport* to *Greensburgh* commenced on the *Columbus* road, on the east side of the former place, while the line from that place southward commenced on the west side of the town, leaving, as it was termed by the witnesses, "a notch" of 847 yards between the two points, along which no line was marked.   Applying the instruction to this space, the jury could scarcely do otherwise than find that the precise line of the road could not be found and identified.   The instruction should not have been given.

The third instruction was equally erroneous, and was calculated to mislead the jury.   It appears from the evidence of all the witnesses who testified in reference to the matter, that the line run by *Butler* on the east of the town, and the point from which he ran from thence south on the west of the town, were both within a fourth of a mile of the town plot, while the *Holman* map shows that *Westport* is immediately on the line of the road.   There was no material variance between the survey and the map at that point, and the controversy in this case is in reference to the location at that point only.   A variance elsewhere between the line as marked on the map and that as actually surveyed by *Butler* is not involved in this case, and can have nothing to do with it.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*B. W. Wilson* and *S. A. Bonner*, for appellant.

*J. Gavin* and *O. B. Hord*, for appellee.