## BRANHAM ET AL. *v.* RECORD.

CONTRACT.—*Donation to Railroad Company.*—*Change in Line of Road.*—*Construction of Contract.*—In a suit upon a contract to donate and pay to The Indianapolis and Vincennes Railroad Company a certain amount of money, when the railroad company should have completed her railroad through Morgan county and have the same ready for the running of cars, "provided, always, that said railroad be located and made as nearly as practicable on the grade of the Indianapolis branch of the New Albany and Salem Railroad from Indianapolis to Gosport, making Mooresville, Brooklyn, Centerton, and Paragon points;"

*Held* (Downey, J., dissenting), that when the railroad company had built its road through Morgan county and completed it for the running of cars through that county, and had made Mooresville, Brooklyn, Centerton, and Paragon points on the road, the defendant was liable to pay the amount agreed to be donated, and it was not necessary that the old grade of the branch road should have been occupied further than to make these places points.

PRACTICE.—*Motion for New Trial.*—*Assignment of Error.*—If a motion for a new trial states the reasons on which it is based, a general assignment of error for overruling the motion brings them before the court for examination and judgment. If reasons which might be properly stated in such motion are omitted, assigning them for error will not make them available in the Supreme Court.

FRAUD WITHOUT DAMAGE.—Fraud without damage constitutes no ground of defence.

APPEAL from the Morgan Common Pleas.

OSBORN, C. J.—The Indianapolis and Vincennes Railroad Company sued the appellee upon the following contract:

" For and in consideration of the benefits that the public in general, and we in particular, will derive from the construction of a first-class railroad from Indianapolis to Vincennes, we, the undersigned, agree to give, donate, and pay to The Indianapolis and Vincennes Railroad Company, the amount annexed to our names, respectively, when said railroad company shall have completed said railroad through Morgan county, Indiana, and have the same ready for the running of the cars through said county: Provided, always, that said railroad be located and made as nearly as practicable on the grade of the Indianapolis branch of the New Albany and Salem Railroad, from Indianapolis to Gosport, making Mooresville, Brooklyn, Centerton, and Paragon points; the same to be collectible without relief from valuation or appraisement laws.

" December 14th, 1865.          Jackson Record, $1,050."
                                          And Others.

The appellants were afterward substituted as plaintiffs. The complaint was in five paragraphs. Each paragraph sets out and makes the contract a part of the complaint, alleges that the railroad company accepted and acted upon the agreement and subscription, and constructed such first-class railroad, making the places mentioned points thereon ; that it was so far completed in accordance with the contract and condition, that on the —— day of ————, 1868, the same was ready for running cars through said county; that on that day and since, continuously, the cars of the railroad did and have run thereon; and thence hitherto she has operated the same as a railroad, transacting the freight and passenger business of the country along the line of the road through said Morgan county, to and from said city of Indianapolis ; that the said subscription of the appellee became and was due on said day, and is, together with the interest thereon, unpaid.

The several paragraphs differ in some particulars. The first states that the company built the road, as far as practicable, along and upon said grade, and did so make Mooresville, Brooklyn, Centerton, and Paragon points thereon.

The second states that she did construct the road by way of those places, making them points thereon, and to a distance of ——— on said grade, south of Centerton; "that at said point, diverging from and leaving said grade, she constructed her said road across White river, and thence along the east side of the same to the town of Martinsville, making said Martinsville a point thereon; thence, proceeding westward and crossing said White river again, at a point some two miles from said town she again intersected said grade, and thence constructed her said road along and upon said grade through to said town of Paragon, making said Paragon a point, and so continuing on said grade, she constructed her said road to the western line of said county, and thence on to the town of Gosport, the terminus of said grade.

"And plaintiff avers that the construction of said road from said point of divergence from said grade, by the way of Martinsville aforesaid, to said point of intersection with said grade, in no wise affects the interest of said defendant, or makes the road less valuable to him."

The third paragraph is like the second, omitting the statement that the divergence, by the way of Martinsville, in no wise affected the interest of the appellee.

The fourth paragraph differs from the third by averring that the construction of the road from the point of divergence from the grade, by the way of Martinsville, was done with the acquiescence and consent of the defendant and with his full knowledge.

The fifth paragraph, after setting out the contract, contains the following:

" That at and before the time of the construction of said road, it was agreed by and between Ambrose E. Burnside, as president and financial agent of the plaintiff, and the people of Martinsville, that if they would give, donate and pay to said

railroad company the sum of thirty thousand dollars, the said plaintiff would locate and construct her said road through said town of Martinsville, making said town a point thereon.

" That thereupon the said defendant and the subscribers living upon the west side of White river, declared their intention not to pay their subscription and donation, and ceased their efforts to secure the sum of fifty thousand dollars by them before agreed to be raised and paid to said plaintiff, in consideration of said road, etc.

" That thereupon the citizens living along and upon the east side of White river, between Martinsville and Indianapolis, proposed to Ambrose E. Burnside, as such president and financial agent, that if said plaintiff would locate and build her said road from Indianapolis to Martinsville on the east side of White river, by the way of Waverly in Morgan county, they, the said citizens living along said proposed route, would give, donate, and pay to the said plaintiff, for the construction of said road, the sum of fifty thousand dollars.

" Thereupon, on learning said facts and understanding that said Burnside was contemplating accepting said proposition, and locating and constructing said road upon the said east side of White river, they, the said defendant and the other subscribers upon the west side of White river, consulted and agreed with said plaintiff, that the location of said road might be changed so as to diverge from said old grade at a point below and south-west of said Centerton, cross White river to the east side, and run by Martinsville, and that they would pay to said plaintiff to the amount of their said subscription, before that time by them agreed to be paid.

" That thereupon said plaintiff, accepting and acting upon said agreement and contract as modified as above described, proceeded to and did construct her railroad in pursuance thereof, and in accordance with every particular thereof, and did make Mooresville, Brooklyn, Centerton, Martinsville, and Paragon, in Morgan county, points thereon, and did locate

and construct the same upon said old grade from Indianapolis to Gosport, except between the points of divergence, as above described. And said plaintiff expressly avers that said divergence was by and with the consent and agreement of said defendant and said other subscribers upon the west side of White river.".

It then avers the completion and use of the road as in the others.

Demurrers were filed and sustained to the second, third, fourth, and fifth paragraphs of the complaint, and the appellants excepted.

The appellee answered in four paragraphs. The first is a general denial.

The second admits the execution of the contract and avers that prior thereto The New Albany and Salem Railroad Company had located the branch mentioned through the towns named in the contract to be made points, and the entire line thereof on the west side of White river, in said county, and had made the grade, etc., on the line so located; that the grade then remained and was unoccupied, ready to be used by said railroad company, the appellants' assignor, and was practicable in its whole length and proper to be used; that the company, on the —— day of ———, did locate its road upon said grade; that afterward, in consideration of thirty thousand dollars paid and secured to be paid by the town of Martinsville, the company changed the location so as to place the line of its road from a point five miles above and north of said town of Martinsville, on the east side of White river, and abandoned the said location, grade, etc., between said towns of Centerton and Paragon, in said county, for eight miles, and constructed and now have the road on such altered line.

The third paragraph avers that the contract was made without any consideration.

The fourth avers that he was persuaded to execute the contract by the representations of the agents of the company, that she had prior thereto located the line of her rail-

road through said county on the west side of White river and on the grade of the branch railroad, and would permanently construct and operate it on that line and grade; that he believed said representations; that the company, in violation of the terms and conditions of said contract and representations, altered and changed the line of her railroad between the towns of Paragon and Centerton, in said Morgan county, on said west side of White river, to the east side thereof, and for a distance of eight miles between said towns did abandon said line and grade of said Indianapolis branch of said New Albany and Salem Railroad; and did fail and refuse to construct her said railroad thereon.

The fifth avers that the railroad company, by its agents, falsely and fraudulently represented to him that she had located her railroad through said county, on the west side of White river and on the grade of the said branch railroad, and would thereon construct the said road; that he, relying upon said representations and believing them to be true, executed the contract; that the road has not been so located, nor did said company construct said road on said grade, but abandoned the same for a distance of eight miles, between the towns of Centerton and Paragon, and for that distance located and constructed her said railroad on the east side of White river.

Demurrers were filed to the second, fourth, and fifth paragraphs of the answer, which were sustained to the fourth and overruled to the second and fifth. Exceptions were duly taken.

The reply was in four paragraphs.

The first was a general denial.

The second averred that the work on the branch railroad referred to was done many years before the execution of the contract; that between the points of divergence in the location of said road from said branch, the old grade had wasted, the bridges decayed, the drains had filled up, and, for a large portion of the distance, no work had ever been done; that the work would be likely to wash away by high water if rebuilt, without an extraordinary expenditure

of money in riprapping the same; that the allignment was very bad, three-fourths of it being curves, with many short ones, some of them in deep cuts and on high hills, and in some places heavy grades reaching almost to the maximum point; that on the east of White river, from the point of divergence on the north to Martinsville, the allignment was good, the same being a straight line all the way; that the surface of the country was level and even, presenting no deep cuts or high fills, making a remarkably easy grade; that the line for construction upon the east side of White river was much shorter, to wit, one mile; the distance from Martinsville south-west to the old grade being required to be constructed any how, to form a junction with the Fairland route; that the location of plaintiff's road upon the east side of White river for said distance made the construction of said plaintiff's road much cheaper, better accommodated the public travel and the transportation of the products of the country in the White river valley and adjacent to said road, and beneficial to the public, the plaintiff, and defendant, and would in no wise injure or inconvenience said defendant, or any other one of the subscribers of donations to said company; wherefore said plaintiff says that it was impracticable to construct the road upon said old grade for said distance, and wholly impracticable as compared with the many advantages presented upon the east side of White river; wherefore said plaintiff located her said road upon said east side of White river for said distance, as she had a right to do under the terms of said defendant's subscription, and all of which said defendant at the time well knew and acquiesced in.

The third paragraph avers that on the —— day of September, 1867, the citizens residing upon the east side of White river, between Martinsville and Indianapolis, were very desirous of, and were making an effort to procure the location of said plaintiff's road all the way on the east side of White river, from Indianapolis to Martinsville; that said defendant and the other subscribers of donations upon the

west side of White river, on the —— day of October, 1867, agreed with said plaintiff that the location of said plaintiff's road should remain upon the west side of White river, as far south as Centerton, and that said plaintiff should have the privilege of crossing White river at some point south of Centerton, and going by Martinsville, if she should desire, and the said defendant and the other subscribers on the said west side of White river would guarantee their subscriptions to the amount of fifty thousand dollars, and that the work should commence immediately on the said west side of White river; that in pursuance of said agreement said defendant and other subscribers did guarantee said fifty thousand dollars, and the work did commence immediately on the west side of White river, and was prosecuted without unnecessary delay to completion, according to the terms of said guarantee and agreement; a copy of which guarantee was therewith filed and made a part thereof; that said plaintiff, in pursuance of said agreement, retained the location of her road upon the west side of White river to a point south of Centerton, from which point she crossed White river to the east side, and located her road through Martinsville, as she had a right to do under the terms of her said subsequent agreement, and all of which said defendant at the time had full knowledge, acquiesced in, and consented to.

The fourth paragraph avers that she admits that the line of the said road was varied from the line of the said old grade, as set forth in the second paragraph of said answer, but says that before the delivery of the contract sued on, it was agreed by and between the said defendant and his co-obligors thereon and the plaintiff, that the divergence and change should be made in the manner aforesaid; that relying upon the good faith of said defendant and said others, she so builded and constructed said road in manner aforesaid; that the said defendant and said others stood by, so agreeing, as aforesaid, with a full knowledge of the facts, and made no objections to the same being so constructed.

The appellee demurred to the second, third, and fourth paragraphs of the reply. The demurrers were sustained to the second and third, and overruled to the fourth. Proper exceptions were taken. The appellee also filed a general denial to the answer to his cross complaint.

It was after the issues were thus formed that the appellants were substituted as plaintiffs.

The cause was tried by a jury, and resulted in a verdict for the appellee. A motion for a new trial was filed and over-ruled, and proper exceptions taken, and final judgment rendered on the verdict.

The reasons assigned for a new trial were for refusing to give instructions asked, and for giving other instructions specified in the motion; for refusing competent evidence offered by them, and for receiving incompetent evidence offered by the appellee; that the verdict was not sustained by the evidence, and was contrary to law.

The errors assigned by the appellants are,

1st. In sustaining demurrers to the second, third, fourth, and fifth paragraphs of the complaint.

2d. In overruling the demurrers to the second, third, and fifth paragraphs of the answer.

3d. In sustaining demurrers to the second and third paragraphs of the reply.

4th. In overruling the motion for a new trial.

There are ten other assignments, but they are all included in the fourth. They are reasons why the new trial should have been granted. If the reasons are not stated in the motion for a new trial, assigning them for error will not make them available in this court. If they are so stated, the general assignment of error for overruling the motion brings them before the court for examination and judgment.

The decision of the case depends principally upon the construction of the contract sued on. If we can determine what the parties meant by that contract, we can dispose of most of the questions discussed by counsel. We shall be aided very

much in arriving at a correct conclusion of that, by ascertaining the intention and purposes of the parties.

By the contract, we learn that the railroad company was engaged in the construction of a railroad from Indianapolis to Vincennes, in this State; that, at some time before the execution of the contract, work had been done upon a branch railroad running through Morgan county; that Mooresville, Brooklyn, Centerton, and Paragon were towns along the line of that branch; that the appellee was desirous of having the railroad built from Indianapolis to Vincennes, and that those four towns should be made points on the road, and we think we may also infer that the company lacked the means to build the road. The purpose of the company was to build the railroad, and the appellee believing that its construction would benefit the public, and himself in particular, in consideration of such benefits, agreed to donate and pay to the company the sum of one thousand and fifty dollars when the road should be completed through Morgan county, ready for the running of cars through that county. The difficulty arises on the proviso. That required that the railroad should be located and made, as nearly as practicable, on the grade of the branch mentioned, making those four towns points. The body of the contract is plain enough. That is a promise to pay when a certain portion of the road is built.

If we were to consider the word "grade" in its primary or strict sense, perhaps it might be held to mean the rise and descent of the branch railroad, its levels; but we think it was not used in that sense. We think it was used with reference to the line of the road, as distinguished from gradient, or rise and descent. If we adopt the same rule with reference to the word "practicable," we shall find that it may be used to express different meanings by contracting parties. To ascertain by reading a contract what a word means, it is a safe rule to consider the whole contract, and from it determine the objects and purposes of the contracting parties, and to put such meaning upon the words used as will secure the accomplishment of those purposes and

objects and carry out the intentions of the parties. Even the literal terms of a contract will sometimes be controlled by what appears to be the real intentions of the parties to it. *Parkhurst* v. *Smith,* Willes, 327; *Tatlock* v. *Harris,* 3 Term R. 174; Chitty Con. 89. The object aimed at in construing a contract is to discover and give effect to the intention of the parties. Words ought to be governed by the intention. Chitty Con. 78. Another rule of construction is, that terms used in a contract shall prevail according to their most comprehensive popular sense, unless there be something to show that they were used in one which is more confined. Another rule is, that every contract is to be construed with reference to its object and the whole of its terms, and accordingly the whole context must be considered in endeavoring to collect the intention of the parties, even although the immediate object of inquiry be the meaning of an isolated clause or word.

Putting ourselves in the place of the contracting parties, as nearly as we can by the contract, let us endeavor to ascertain and determine what they meant by the words " located and made, as nearly as practicable, on the grade," etc. To do so, we must, as we have seen, look to the whole contract.

Taking the whole contract together, including the proviso, we think that the main purpose of the appellee was to secure the construction of the railroad, and if practicable, through the towns named in the proviso. To adopt the construction contended for by the appellee, and as given by the court below, makes the actual occupancy and use of the old road-bed the entire distance between stations material. There is nothing in the contract requiring such a construction; nothing indicating any purpose to make the adoption of the line of that branch railroad a condition, or desirable, only so far as to make the towns mentioned points on the new road. The completion of the railroad, ready for the running of cars through Morgan county, and to and through those towns, so as to make them points on it, and give them and the county

the facilities of a railroad, was all that the appellee was seeking to accomplish by his proposed donation.   To require the company to adopt the old road-bed between stations, or otherwise than to run to those places, or to prevent it from building its road to other points, towns, or cities, or from making connections with other roads, or from locating and constructing its road with a view to the public benefit and its own profit, does not seem to have been contemplated by the terms of the contract.   They were all proper elements to be considered, even if we give the word or phrase the more literal or strict signification.   We can understand why it was considered important and of value to the appellee and the public, that the road should touch at and run to towns and cities, and that he should desire to contract that it should do so, as a condition to the payment of his subscription; but it could make no difference to him or the public what particular ground it occupied for its road-bed between those points, except that it should be the best for its own and the public interest, both of which, when rightly understood and acted upon, are in entire harmony.

The construction contended for by the appellee gives the railroad company no discretion in the selection of the ground to be occupied for the road.   Even if it could be made upon as good ground as the grade of that branch, and if its construction upon such ground would be far more advantageous and beneficial to the company, the public, and the appellee, still, according to the construction contended for, its selection would defeat the collection of the money. Under such a construction the company was not only required to construct its road through those towns, but it must actually locate and make it upon the precise road-bed, if, in an engineering point of view, it was practicable to do so.

It is said that the appellee was interested in preventing the construction of the road to Martinsville, and in building up the towns named as its rivals, and on that account it was material to him to have the road built on the old grade all the way.   Inasmuch as no such motive or purpose appears

in the contract, we will not by construction impute it to him. By the contract he sought to secure the construction of the road to certain towns, and not to prevent its construction to others.

The proviso may, we think, be paraphrased and read, that said railroad shall be located and made, as nearly as practicable, on the grade of the Indianapolis branch of the New Albany and Salem Railroad from Indianapolis to Gosport, "so as to make," or "which will make," or "thereby making" Mooresville, * * * . points, without materially changing its meaning, although it would be a little more apparent.

When the railroad company had built its road through Morgan county and completed it for the running of cars through that county, and had made Mooresville, Brooklyn, Centerton, and Paragon points on the road, the defendant was liable on his contract, and all the rulings of the court based upon the construction of the contract, which required that the old grade of the branch road should be occupied otherwise than to make those places points, were erroneous.

We have not deemed it necessary to discuss any of the pleadings, in particular, because the rulings upon all of them were based upon the same theory, except those denying the consideration and setting up the fraud.

As to the fifth paragraph of the answer, it alleges false representations and fraud about the location of the road, that it had been located on the west side of the river; and yet he requires in his contract that it should be thereafter located. Again, he fails to show any damage resulting to him by reason of the failure to construct the road on that line. Fraud without damage is no ground of defence. *Wiley* v. *Howard*, 15 Ind. 169; 2 Parsons Con. 771.

We do not deem it necessary to discuss or pass upon any of the questions involved in the motion for a new trial, as under the construction given to the contract all that relates to the practicability of locating and making the road upon

the grade of the branch road will be excluded. As it seems to be admitted that the road had been built as provided in the body of the contract, and to the four towns named as points, before the commencement of the action, there will remain nothing to try, unless the appellee shall amend his fifth or some other paragraph of his answer, so as to raise some other issue than is now raised by the pleadings. The questions raised by the instructions to the jury are disposed of by the construction given to the contract.

The judgment of the said Morgan Court of Common Pleas is reversed, with costs; cause remanded, with instructions to grant a new trial, overrule the demurrer to second, third, fourth, and fifth paragraphs of the complaint, and to sustain the demurrer to second, fourth, and fifth paragraphs of the answer, and for further proceedings in accordance with this opinion and judgment.

DOWNEY, J.—I am unable to agree with the majority of the Court in the view which they have taken of this case. Upon the performance of certain acts by the company, constituting conditions precedent, the appellee, Record, promised to pay a certain amount of money. The part of the contract upon which the difference of opinion arises, is as follows: " Provided always that said railroad be located and made as nearly as practicable on the old grade of the Indianapolis Branch of the New Albany and Salem Railroad, from Indianapolis to Gosport, making Mooresville, Brooklyn, Paragon, and Centerton points." There are two things plainly stipulated for in this clause of the contract. 1. That the railroad be located and made as nearly as practicable on the old grade, all the way from Indianapolis to Gosport; and 2. That Mooresville, Brooklyn, Paragon, and Centerton shall be made points. The route stipulated for is all on the west side of White river. The deviation from the line of the route contracted for commences some five miles above the town of Martinsville, crosses White river near that point, over an expensive bridge, and runs to Martinsville, a dis-

tance of five miles, at which place it is not less than one and a half or two miles from the line mentioned in the contract. Leaving Martinsville, going in the direction of Gosport, it runs two miles, then again crosses the river, over another expensive bridge, and near that point intersects the route mentioned in the contract. The pleadings and evidence show clearly and conclusively that the deviation from the agreed route was not on account of any impracticability in the route, but was for a consideration of thirty thousand dollars paid to the company by the town of Martinsville, or parties interested in having the road made to that place. The evidence shows also that there was a rivalry between the route on the west side of the river and a route on the east side, which contemplated Martinsville as a point, and hence the very pointed stipulation in the contract requiring the railroad to be made on the old route, or as near as practicable to it. In view of these facts the construction of the contract adopted by the majority of the court is, in my opinion, in utter violation of the plain language and evident intention of the parties. The opinion of the majority of the court seems to bring into the case, as an element or circumstance governing them in the construction of the contract, the question of public convenience and whether the company had means to make the road on the agreed route. I utterly deny that these considerations have anything to do with the practicability of constructing the road on the agreed line, within the intention and meaning of the parties. It would be strange if the parties who have agreed to pay sums of money, on condition that the road should be located on the agreed route, can be compelled, after the company has sold out to a rival route, to pay their money to build the road on the rival line. I think the parties subscribing had a right to stipulate for the terms upon which the company should have their money, and that the company must show a compliance with such terms before it can recover. The majority opinion says: "To adopt the construction contended for by the appellee, and given by the court below,

makes the actual occupancy and use of the old road-bed the entire distance between stations material. There is nothing in the contract requiring such a construction; nothing indicating any purpose to make the adoption of the line of that branch railroad a condition, or desirable, only so far as to make the towns mentioned points on the new road. The completion of the railroad ready for the running of cars through Morgan county, and to and through those towns, so as to make them points on it, and give them and the county the facilities of a railroad, was all that the appellee was seeking to accomplish by his proposed donation. To require the company to adopt the old road-bed between stations, or otherwise than to run to those places, or to prevent it from building its road to other points, towns or cities, or from making connections with other roads, or from locating and constructing its road with a view to the public benefit and its own profit, does not seem to have been contemplated by the terms of the contract. They were all proper elements to be considered, even if we give the word or phrase the more literal or strict signification. We can understand why it was considered important and of value to the appellee and the public that the road should touch at and run to towns and cities, and that he should desire to contract that it should do so as a condition to the payment of his subscription, but it could make no difference to him or the public what particular ground it occupied for its road-bed between those points, except that it should be the best for its own and the public interest, both of which when rightly understood and acted upon are in entire harmony."

Suppose the construction of the contract contended for by the appellee, and given by the court, does require the actual occupancy of the old road-bed the entire distance between stations, as nearly as practicable. Is not this precisely what was contracted for? Not only does the contract require it between stations, but it requires it, in express terms, all the way from Indianapolis to Gosport. Except where that route is impracticable, it was the plain duty of the company to use

it, if it expected to look to the appellee to pay the money promised. I do not perceive how it can fail to be seen that the appellee intended to make the use of the old line essential, as nearly as practicable, both a condition and desirable, as well between the towns named, as at the points where they are situated. We do not know that the appellee did not own lands on the line of the old grade, which by the deviation from the agreed route were damaged, that he had not in view the making of a switch, a station, or a town on the neglected route. At all events, he had a right to make his own bargain, and the terms and conditions upon which he would pay his money, and it is not competent for a court, in view of the interests of the company or of the public, to make a different contract for him. If there is any reason why he desired the road made to the towns named, more than that the road should run on the old grade, as nearly as practicable, all the way from Indianapolis to Gosport, it is not shown. That the court cannot see why the appellant should want the road to run on the old grade, as well between the towns as at the towns, can surely not control the construction of the contract. If he made that a condition, I think that is an end of the controversy. That such is his contract, is very plain to me. But it is urged that the construction contended for by the appellee "gives the railroad company no discretion in the selection of the ground to be occupied for the road." If the court means by this that the company must comply with its contract with the appellee before it is entitled to his money, and that it has no discretion as to this, I agree to that. But if it is meant that the company could not adopt another route, and thus abandon the right to demand the money promised by the appellee on the condition named, then I think otherwise. The company did not obligate itself, at all events, to make the road on the agreed route. The contract was simply that if they did so the appellee was to pay them the money; if not, they could not recover it.

That I am right in the construction of this contract is,

I think, shown by several cases already decided by this court. I will refer to some of them. *The Evansville, etc., Railroad Co.* v. *Shearer,* 10 Ind. 244. This case shows that conditional subscriptions of stock (and the same rule applies to donations), in the absence of any special prohibition, have been sustained as authorized by, and not against, public policy. The parties subscribing are not to be considered as stockholders, until the company has performed the condition upon which the understanding depends; and when that is done they become stockholders by force of the agreement of the parties, and the subscription becomes absolute. In that case, the contract was to pay on condition that the road should be permanently located on the east side of White river, within one mile of the road run between Indianapolis and Spencer. The company had made a pretended location of its road in accordance with the agreement, but afterward had resolved to change it. It was held that the company was bound to show a permanent and specific location according to the contract, before it could maintain an action on the same. The court refers to *Fisher* v. *The Evansville, etc., Railroad Co.,* 7 Ind. 407, and *Gillum* v. *Dennis,* 4 Ind. 417.

In *The New Albany, etc., Railroad Co.* v. *McCormick,* 10 Ind. 499, the subscription was on the condition that the company should "locate said railroad through the town of Lafayette, and cross the Wabash river north of Brown street in said town." It was decided that the agreement required the company to cross the river where a northerly line from the street would strike it; but it was not necessary to cross the river in the town unless such line struck the river within the same. In *Shearer* v. *The Evansville, etc., Railroad Co.,* 12 Ind. 452, the condition was, that the road should be permanently located on the east side of White river, within one mile of the line run from Indianapolis to Spencer, if Martinsville be made a point. The court said: "Upon a careful examination of the testimony, we think it was not proven that the plaintiffs had performed all the conditions. We think the evidence does not show that the road was permanently located 'within one

mile of the line run between Indianapolis and Spencer.' This was an essential part of the condition, as much so as that the road should be located on the east side of White river, or that Martinsville should be made a point." This case is quite in point against the conclusion of the majority of the court in the case under consideration. It gives the party sought to be held liable the benefit of his contract, and does not attempt to make another contract for him. See *Taylor* v. *Fletcher*, 15 Ind. 80; *Smith* v. *Allison*, 23 Ind. 366. In *The Evansville, etc., Railroad Co.* v. *Meeds*, 11 Ind. 273, the condition was, that the road should be permanently located "two miles east of the court-house in Washington." It was held by the court, that the words of the contract plainly indicated an intention that the road should be located just two miles east of the court-house; that they expressed an agreement which, for aught that appeared, the company could have fulfilled in accordance with its terms; that they were not ambiguous, and could not be explained by parol.

In *Parker* v. *Thomas*, 19 Ind. 213, and again in 28 Ind. 277, the condition was, that the road should be located within one-fourth of a mile of the plat of the town of Westport, etc. It was held that the condition was valid, and that a location within the agreed distance from the town plat was a condition precedent and essential to a recovery.

There is no intimation in any of these cases that questions regarding the pecuniary condition or ability of the company, or the interest of the company, or of the general public, can in any way enter into the question of construction. But each person subscribing has been given the benefit of his contract, by holding the company to a compliance with the plain stipulations thereof. In my opinion the judgment of the majority of the court adopts a wrong construction of the contract, and, without intending to do so, sanctions an act of bad faith on the part of the railroad company.*

*T. A. Hendricks, O. B. Hord, A. W. Hendricks,* and *W. M. Franklin*, for appellants.

S. *Claypool,* F. P. A. *Phelps,* S. R. *Harryman,* W. R. *Harrison,* and W. S. *Shirley,* for appellee.

*Petition for a rehearing overruled.