GEORGE T. HOAGLAND, Respondent, *v.* THE HANNIBAL AND
ST. JOSEPH RAILROAD COMPANY, Appellant.

1. *Practice—Joinder of Actions—Pleading.*—A cause of action for damages for
the detention of property cannot be united in the same petition with causes
of action founded upon contracts.

2. *Practice—Joinder of Causes of Action—Pleading.*—Several causes of action
founded upon distinct contracts cannot be united in the same count of the
petition.

3. *Corporations, Railroad, Authority of.*— A corporation chartered with power
to build a railroad from one point to another, and to transport passengers
and freight, has no authority to run a line of steamboats in connection with
the road, and all contracts beyond the authority given in the charter are
void.

*Appeal from Buchanan Circuit Court.*

The plaintiff moved the court to instruct the jury—

1. If they believe from the evidence that plaintiff shipped
the lumber named in his petition under and by virtue of the
bill of lading read in evidence, and that by virtue of said bill
of lading and said shipment the said lumber was transported
over the Chicago, Burlington and Quincy railroad, and by
the officers of said railroad delivered to the defendant under
said contract of affreightment or bill of lading, and that the
agents of defendant transported said lumber over its road to
St. Joseph, and then conveyed the same to the proper depot
to be shipped on the steamers of defendant carrying freight
on the Missouri river and to Council, Bluffs and Omaha City,
and there delivered the same for the purpose of shipping the
same to its destination, and recognized the contract evi-
denced by said bill of lading and acted on the same, then
defendant was bound by the terms of said bill of lading to
transport said lumber to the place named in said bill of lad-
ing in a reasonable time ; and if the jury further believe
defendant failed or refused to so ship or transport said lum-
ber to the destination named in said bill of lading, and at the
same time shipped other goods received by said company after
the arrival in St. Joseph of plaintiff's lumber, to the exclu-

sion of plaintiff's lumber, then the jury will find for plaintiff on the second count of said petition, and assess his damages at an amount equal to the difference between the price to be paid by plaintiff for the transportation of said lumber and that actually paid by plaintiff to get his lumber to its destination.

2. If the jury further find and believe from the evidence that plaintiff, by himself or agent, demanded the lumber sued for from defendant or his agents, having the possession thereof in St. Joseph, before the commencement of this suit, and that they refused to deliver said lumber to plaintiff upon such demand, then the jury will find for the plaintiff upon the first count of said petition, and assess his damages at such sum as the evidence shows he sustained by the detention of said lumber.

To the giving of which instructions the defendant at the time excepted.

The defendant moved the court to instruct the jury as follows:

1. If the jury believe from the evidence that there was no understanding by which the Chicago, Burlington and Quincy Railroad Company, of the State of Illinois, was authorized to make through contracts for the transportation of lumber over said Chicago, Burlington and Quincy railroad, the Hannibal and St. Joseph railroad, and up the Missouri river by the steamboats known as the Missouri River Packet Company's boats, to Council Bluffs and Omaha, they will find for defendant, notwithstanding they may believe from the evidence that George C. Hammond and other agents of said Chicago, Burlington and Quincy Railroad Company may have signed the bills of lading read in evidence.

2. If the jury believe from the evidence that the bills of lading read in evidence were given by George C. Hammond and other agents of the Chicago, Burlington and Quincy Railroad Company; that said agent had no authority from the defendant to bind it to transport the lumber sued for

beyond the city of St. Joseph, Mo., other than that derived from Capt. Ford; and that said lumber was shipped to St. Joseph, and that said Ford was employed by the defendant to superintend the running of a line of steamboats for defendants from St. Joseph to Omaha, and that he was only authorized to make contracts for the shipping of local freights from St. Joseph to Omaha, they will find for the defendant, notwithstanding they may believe from the evidence that said Ford gave the rates upon lumber from St. Joseph to Council Bluffs and Omaha to Henry Martin, the general freight agent, and Geo. C. Hammond, the assistant general freight agent of the Chicago, Burlington and Quincy Railroad Company, and that upon such authority they gave the bill of lading read in evidence.

3. If the jury believe from the evidence that William B. Robinson, the general freight agent of the defendant at the time of making the contract sued on prior thereto, and that prior thereto he notified Henry Martin, the general freight agent of the Chicago, Burlington and Quincy Railroad Company not to contract for any more lumber to be carried over the defendant's railroad and up the Missouri river to Council Bluffs and Omaha by the steamboats superintended by Capt. Rufus Ford, and that said steamboats were owned and controlled by the defendant, they will find for the defendant, notwithstanding they may believe from the evidence that the assistant general freight agent of the Chicago, Burlington and Quincy Railroad Company may have contracted with the plaintiff to carry said lumber in question to Council Bluffs and Omaha by authority of Capt. Ford.

4. If the jury believe from the evidence that plaintiff's lumber in question came into possession of defendant in the regular course of business and without any notice being given to it at the time by the plaintiff, or the Chicago, Burlington and Railroad Company, that the same was to be carried under a special contract made by said company with plaintiff, then they are instructed that defendant was not bound to carry said lumber according to any special contract, and was

only bound to carry the same as it was other freight of the same class received from other railroad companies in the usual course of its business.

5. The jury are instructed that the defendant had a right to retain the plaintiff's lumber in question when plaintiff demanded the same of it at St. Joseph, Mo., until the freight thereon for carriage over defendant's road from Hannibal to St. Joseph, Mo., together with the freight due thereon for the carriage of the same over the Chicago, Burlington and Quincy railroad, which had been paid by defendant when it received the same from the said railroad company in the regular course of business; and that if they believe from the evidence that plaintiff refused to pay the same to defendant when he demanded said lumber of defendant, then they will find for defendant on the first count of plaintiff's petition.

6. The jury are instructed in this case, that there was no more of a special contract made so as to bind defendant than is generally and usually made in all cases by implication when the Chicago, Burlington and Quincy Railroad Company received freight for transportation over defendant's road.

7. The jury are instructed that the authority given to the agents of the Chicago, Burlington and Quincy Railroad Company by Capt. Rufus Ford, in June, 1863, at Chicago, Ills., was not sufficient to authorize said agents to bind this defendant by a contract with plaintiff to transport the lumber in question from Chicago to Council Bluffs and Omaha, on the Missouri river above St. Joseph, unless defendant ratified such contract after it was made.

8. That said Rufus Ford had no authority to authorize the agents of the Chicago, Burlington and Quincy Railroad Company to make the through contract in question concerning plaintiff's lumber so as to bind the defendant.

9. That the agents of the Chicago, Burlington and Quincy Railroad Company had no authority to bind the defendant to carry out the special contract made by it with plaintiff in regard to the transportation of the lumber in question.

10. If the jury believe from the evidence that the lumber

in question came into the possession of defendant as a common carrier of freight in the usual course of business, and that said lumber was marked for Council Bluffs and Omaha, and that it carried the same from the eastern to the western terminus of its road, then such carrying by defendant was not such a ratification of the contract made by the agents of the Chicago, Burlington and Quincy Railroad Company of Illinois, as evidenced by the bill of lading read in evidence, so as to bind the defendant to carry said lumber beyond St. Joseph, they will find for the defendant on the second count of plaintiff's petition.

11. The jury are instructed in this case, that if they shall believe from the evidence there was no special contract made by defendant with plaintiff to transport the lumber sued for, and that a delay happened in the transportation in consequence of an unusual press of business and of low water in the Missouri river from St. Joseph to Council Bluffs and Omaha on said river, and that the defendant had a reasonable equipment for all ordinary purposes, and that said lumber was transported by defendant after it came into its possession with as much expedition as was practicable under all the circumstances, they will find for the defendant on the second count of plaintiff's petition.

12. If the jury shall believe from the evidence that the transportation of said lumber, at the rates agreed on, was upon the understanding that said lumber was to be transported at the defendant's convenience solely, then they are instructed that the defendant is not liable for any delay that occurred in said transportation, unless they shall believe further from the evidence that the defendant had the means of conveyance and could have transported the same after other other freight entitled to preference over said lumber had been transported.

13. If the jury find for the defendant, they will find the amount of freight and charges for the transportation of said lumber over defendant's road, together with the amount of charges of transportation that was paid by defendant to the

Chicago, Burlington and Quincy Railroad Company when it received said lumber from said company.

All of which instructions, except those numbered 7, 8 and 13, the court refused to give to the jury ; to which ruling of the court the defendant at the time excepted.

*Carr*, and *Hall & Oliver*, for appellant.

I. The first count was in the nature of an action of trespass for unlawfully detaining the lumber sued for, and for the specific recovery of damages for the detention thereof. The second count is for the breach of an alleged special contract. The former is an action *ex delicto*, the latter is an action *ex contractu* ; they do not belong to the same class. This is a misjoinder of actions—R. C. 1855, p. 1228, § 2, & p. 1231, § 6 ; Clark's Adm'r v. Hann. & St. Jo. R.R. Co., 36 Mo. 202. The motion in arrest of judgment should have been sustained.

II. There are two counts or causes of action alleged in the petition, and issue joined upon both. The verdict of the jury is general ; it does not respond to the issue as it was necessary to do—R. C. 1855, p. 1263, §§ 20 & 21; Clark's Adm'r v. Hann. & St. Jo. R.R. Co., 36 Mo. 202.

III. The respondent set up a special contract in the second count in the petition, and the evidence adduced on the trial totally failed to prove a special contract as alleged. There was a total failure of proof ; hence the instructions asked at the close of the respondent's evidence ought to have been given—Clark's Adm'r v. Hann. & St. Jos. R.R. Co., 36 Mo. 202 ; Smith v. Hann. & St. Jo. R.R. Co., 37 Mo. 287 ; Briggs v. Vanderbilt, 19 Barb. 222 ; Coon v. Osgood, 15 Barb. 583 ; 30 Mo. 499.

IV. The appellant promptly carried the lumber described in the respondent's petition to the end of its road. The lumber came to it in the regular course of business. As a common carrier, it was bound to receive the lumber, and carry it to the end of its line. This the appellant did ; it was not bound to do any more. No officer or agent of appellant did

agree to do any more ; and if any such officer or agent had done so it would not have been binding—it would have been *ultra vires*—Pearce v. Madison, &c. R.R. Co., 21 How. 442 ; W. N. Y. & N. H. R.R. Co., 22 Conn. 1 ; Elmore v. Naugatuck R.R. Co., 23 Conn. 457 ; 22 Conn. 502 ; 24 Conn. 468 ; Nulten v. Conn. Riv. Co., 1 Gray, 502 ; 6 Hill, 157 ; 18 Vt. 140 ; 23 Vt. 209.

*H. M. & A. H. Vories,* and Ensworth, for respondent.

I. This suit was brought on a special contract of affreightment, in which no exemption from the common law liabilities was preserved, and the appellant did not even pretend that the respondent had notice of any such usage, and no evidence was permissible to vary the terms of the contract sued on—Ang. on Car. § 226 & 294, and note ; Atkison v. Richie, 10 East. 533.

II. The motion in arrest was properly overruled, as no demurrer was filed. Every objection to the petition was waived except the jurisdiction of the court and the want of facts to constitute a cause of action—R. C. 1855, p. 1231, § 6 & 70.

HOLMES, Judge, delivered the opinion of the court.

The petition contained two counts, one sounding in damages for the detention of personal property, and the other founded upon matters of contract. These causes of action cannot be united in the same petition ; nor did they arise out of one and the same transaction. There was a misjoinder of counts.

The second count united four several causes of action founded upon so many distinct contracts for the transportation of lumber at different times. They were improperly united in the same count.

For both reasons, the motion in arrest of judgment should have been sustained—Rev. Stat. 1855, p. 1228 ; Clark v. Hann. & St. Jo. R.R., Co. 36 Mo. 202.

It is difficult to say what or whether any good cause of action against the defendant is stated in the second count.

It is alleged that the defendant and the Chicago, Burlington and Quincy Railroad Company " confederated together and agreed" to transport freight from Chicago to Omaha, N. T., at certain fixed rates of freight agreed upon between them for the several parts of the connected route, including a line of steamers running on the Missouri river from St. Joseph to Omaha, owned and conducted by the defendant. It is there averred that the plaintiff made his several shipments of lumber at different dates at Chicago, and they were received for transportation according to the custom established. There are no distinct allegations which make the plaintiff a party to these agreements or arrangements. There was evidence tending to show merely, that there was some understanding between the agents of the two railroad companies and the line of steamers in relation to the forwarding of freight received for transportation at Chicago, and concerning the rates of freight to be charged by each on the several parts of the route from Chicago to Omaha. The action was not founded upon the written freight contracts which were signed by the Chicago, Burlington and Quincy Railroad Company, and contained an express provision that the company was to be responsible only for the delivery of the lumber to the next carrier at the termination of their railroad at Quincy. They contained also a guarantee by that company that the property should be carried over the other parts of the route at certain rates of freight therein specified for each. It was not shown that the defendant was a party to these contracts, otherwise than as they received the several lots of lumber at Quincy, under the way-bills for transportation over their railroad. It was not denied that the property was safely carried to the termination of the railroad at St. Joseph, and at the rates guaranteed by the former company. On the trial the plaintiff appears to have abandoned the cause of action which he had undertaken to state in his petition, and submitted his case to the jury under instructions predicated upon a cause of action which was not stated in the petition; the evidence tending to show no more than that

the defendant was merely the agent of the first company to forward the lumber, and undertook as carrier for its own part of the route only.

It is insisted that the defendant was bound by express contract to carry and deliver the lumber of the plaintiff at Omaha. No such contract was found, nor do we think it can be implied from the mere fact that the property was received under the way-bills for transportation over the railroad at the rates of freight fixed for that part of the whole route. No more could be implied than that they undertook to carry the property to the end of the railroad and deliver it to the next carrier. It was admitted that the defendant owned the line of steamers on the Missouri river, and it was proved that the manager of the line was conducting it as the agent of the defendant, and that it was run as a separate line of transportation under the name of the Missouri River Packet Line, though in connection with the railroad. The corporation had no power by its charter, nor have the officers and agents of the company any authority by law, to run a line of steamers on the Missouri river as a part of the company's line of transportation, and all contracts made beyond the authority given by their charter were utterly void — Pearce v. Madison & Indianap. R.R. Co., 21 How. (U.S.) 442. We need go no further than to say there was nothing in the evidence from which it can legally be inferred that the defendant had extended their railroad route to Omaha, N. T., so that when they received goods from other railroads at Quincy, they became bound to carry them to Omaha, or to any point beyond the termination of the railroad itself, unless they had made some contract to do so.

On the case made, we think the plaintiff's instructions that were given should have been refused.

As the case must be reversed mainly upon points of pleading and evidence, we do not undertake to settle the principles of law which may govern when distinct issues are made up for trial upon pleadings which may have some approach to legal precision. The case as presented here is such an

inextricable mass of confusion and disorder, that it would be as vain as useless for us to attempt to unravel it, or to make a final disposition of the controversy on the merits. The plaintiff will have leave to file an amended petition.

Judgment reversed and the cause remanded. The other judges concur.