THE PACIFIC RAILROAD COMPANY, Plaintiff in Error, *v.* JOHN S. SEELY *et al.*, Defendants in Error.

1. *Corporation — Railroads — Agreement to locate depot in consideration of donation of lands, void when.*—A. agreed with the Pacific Railroad Company to deed it a certain lot of ground for purposes of speculation in consideration that the company would locate a freight and passenger depot on his land. There was no evidence that the land was to be used for the general business of locating, constructing, managing, and using the road. *Held,* that although in one sense the company was a private corporation, yet its chartered privileges were granted, in part, to subserve great public interests; that such an agreement might be superinduced by prospects of mere gain, and thus the general welfare and good of the public might be sacrificed to subserve mere private interest; that for this reason such an agreement was void against public policy.

2. *Corporations — Railroad — Power to hold land, governed by its charter.*— The charter of the Pacific Railroad Company gave it power to acquire a strip of land not exceeding one hundred feet wide for a right of way, and to hold sufficient ground for the erection and maintenance of depots, landing places, etc. *Held,* that the corporation had no power to acquire land for purposes of speculation. A corporation can purchase and and hold land only for such purposes as are authorized by its charter.

*Error to First District Court.*

*Whittelsey,* for plaintiff in error.

I. The contract between the parties to the instrument for the depot ground and reservoir was a valid contract, and has not been complied with. (Sess. Acts 1849, p. 219, §§ 7, 8, 10; Sess. Acts 1851, p. 268, § 9; R. C. 1855, § 1, subd. 4, §§ 13–22, 27, 29, subds. 2, 3.)

II. The Pacific railroad had authority to locate its stations where it deemed best for itself, and to contract for such location. Railroads are private corporations for private profit. (Bissell v. M. S. & N. I. R.R., 22 N. Y. 258, 287; Sess. Acts 1849, charter, §§ 7, 8, 13; 1 Redf. on Railw. 53, 54, notes 6, 7; Taylor v. Cedar Rapids & St. P. R.R., 25 Iowa, 371; Chapman v. Mad River R.R. *et al.*, 6 Ohio St. 119.)

III. The company had the power to contract for the lands, both at common law and under the statutes. (Ang. & A. on Corp. §§ 145, 151, 110, 153; Bank v. Niles, 1 Doug., Mich., 401, 403; Page v. Heineberg, 40 Verm. 81; 2 Blackst. Com. 475; 2 Kent's Com. 27, 77.) The agreement was not void on grounds of public policy. (Racine County Bank v. Ayers, 12 Wis. 512; Cumberland Valley R.R. v. Baal, 9 Watts, Penn., 458.) Subscriptions on condition of locating lines or stations are valid, deciding against the New York cases. (Pierce, Am. R.R. L., 70, 71; Chamberlain v. Painesville, etc., R.R., 15 Ohio St. 225, 247, affirming 6 Ohio St. 119; Ashtabula & N. L. R.R. v. Smith, 15 Ohio St. 328; Henderson & N. R.R. v. Leavell, 16 B. Monr. 358, 364; McMillan v. Maysville & S. RR., 15 B. Monr. 218; Carlisle v. Terre Haute & Ind. R.R., 6 Ind. 316; Fisher v. Evansville & I. R.R., 7 Ind. 407; Troy & G. R.R. v. Newton, 1 Gray, 544; N. H. C. R.R. v. Johnson, 10 Foster, N. H., 390, 401; North Mo. R.R. v. Winkle, 29 Mo. 318; Miller v. Pittsburg, etc., R.R., 40 Penn. 237; O'Neal v. King, 3 Jones, N. C., 517; Kennett v. Plummer, 28 Mo. 142; State v. Hann. & St. Jo. R.R., 37 Mo. 265; 10 U. S. Stat. 802; Sess. Acts 1852–3, p. 10, § 5; R. C. 1855, p. 425, § 29, *e, d,* 2 and 3; State v. Bailey, 16 Ind. 46; Junction R.R. Co. v. Reeve, 15 Ind. 236; Taylor v. Cedar Rapids & St. P. R.R., 25 Iowa, 371; Chapman v. Mad River, etc., R.R., 6 Ohio St. 119.)

*Draffin & Muir*, for defendants in error.

I. The contract sued on is void, as being against public policy. (Fuller v. Dame, 18 Pick. 479; Gray v. Hook, 4 Comst. 456; Davison v. Seymour, 1 Bosw. 89; Rose v. Truax, 21 Barb. 361, 372, 374.)

II. The plaintiff, under its charter, has no power to engage in town speculations; no power to purchase lands for villages and towns, either to rent or sell. (Act of Incorporation, 1849, p. 219, §§ 1, 7, 20, and amendatory act, 1851, § 9, p. 272; R. C. 1855, § 1, 4th subd., p. 406, vol. 1; authorities hereafter cited.)

III. The petition is multifarious. (40 Mo. 482; 26 Mo. 72.)

IV. As the suit is founded on a written contract, the same should have been filed with the petition. (Gen. Stat. 1865, ch. 165, § 50; Dyer v. Murdock, 38 Mo. 226.)

WAGNER, Judge, delivered the opinion of the court.

This was a suit instituted in the Circuit Court of Moniteau county, praying for a specific performance. It appears from the record that one William T. Seely, in his lifetime and on the 21st day of December, 1857, made and executed a contract in writing with plaintiff, which contained an obligation that, in consideration that plaintiff would locate a freight and passenger station on the land of said Seely, he would, in addition to the land already given, convey to the railroad, whenever called upon, four acres of land, for freight and passenger stations.

He further agreed, by said contract, to lay off into town lots one hundred and sixty acres, in such manner as the engineer of the plaintiff might direct, and make a deed to an undivided fourth part thereof to such persons as the directors of the plaintiff should designate. Seely made a plat of the town, showing the streets and alleys and railroad grounds, and placed the same on the records of the county. Afterward, in the year 1863, Seely died, and the plaintiff, in 1868, commenced this suit against his heirs and administrators. The petition averred that plaintiff had fully complied on its part with all the acts which constituted the consideration.

To this petition the defendant interposed a demurrer, and assigned the following grounds of objection: 1st. Because the petition does not state facts sufficient in law to constitute a cause of action, in this: the corporation or plaintiff, in the construction of the road and in the location of its depots and passenger stations, acted in the capacity of commissioners representing, in

part, the community or public, and could not by contract, bind itself to locate a depot at any particular place. Such an agreement is against public policy and *nudum pactum*, and can not be enforced. 2d. Because the plaintiff had no power under its charter to make the contract sued on; it would have no right to engage in town speculations in the purchase of lands and holding them for villages and towns, either to rent or sell. The contract is therefore void. The third ground taken by the demurrer was that the petition was multifarious, and the fourth objection was that the written contract was not filed with the petition. The demurrer was sustained in the Circuit Court, and no answer being filed, judgment absolute was rendered in favor of the defendants. This judgment was affirmed in the District Court, and the case is here for revision on error.

The first two assignments set forth in the demurrer constitute the essential merits of the case, and will be alone considered. There are certain, contracts which corporations can not make, which it would be perfectly competent for individuals to execute. The charter of corporations constitutes the chart of their authority, and they have no powers except such as are expressly granted, and such as are auxiliary or necessary to carry out and subserve the object of their creation.

The act incorporating the Pacific railroad defines its powers and specifies the objects for which it was created. The seventh section of the act incorporating the company provides that said company shall have full power to survey, mark, locate, and construct a railroad from the city of St. Louis to the city of Jefferson, and thence to some point in the western line of Van Buren county (afterwards changed to Cass county), in this State, with a view that the same may be hereafter continued westwardly to the Pacific Ocean; and for that purpose may hold a strip of land not exceeding one hundred feet wide, and may also hold sufficient land for the construction of depots, warehouses, and water stations; and may select such route as may be deemed most advantageous, and may extend branch railroads to any point in any of the counties in which said road may be located. (Sess. Acts 1849, p. 220, § 7.)

In 1851, section 7, *supra*, was amended so as to give the company authority to locate and construct the road on any route which it might deem most advantageous, to any point on the western line of this State which it might select; and the power was also conferred to hold a strip of land not exceeding one hundred feet wide, except where it was necessary for turn-outs, embankments, or excavations; in which case it was authorized to hold a sufficient width for the preservation of the road; and it was further empowered to hold sufficient land for the erection and maintenance of depots, landing places or wharves, engine houses, offices, machine shops, warehouses, and wood and water stations. (Sess. Acts 1851, p. 272, § 10.) Section 20 of the original charter declares that the operations of the company shall be confined to the general business of locating, constructing, managing, and using said railroad, and the acts proper to carry the same into complete and successful operation.

The above sections designate the general objects of the road, and comprise its whole power in relation to obtaining and holding real estate. In regard to the first question presented by the record, there have been differences of opinion in the courts, and the authorities are admittedly diverse. The case of Taylor v. Cedar Rapids, etc., R.R. Co., 25 Iowa, 371, so strongly relied upon by the counsel for the plaintiff in error to show that a contract for the location of a depot or station-house at a particular place is valid, is hardly an authority for the position he assumes. There the grantor had conveyed the right of way to a railroad company upon the condition that the depot of the company should be located within a certain distance of a particular place. The grantor did not surrender the land, and the railroad failed to comply with the stipulations, and located the depot at another and different place. The court held that a breach of the condition defeated the estate conveyed by deed, and that the vendor, not having surrendered the possession of the land, might enforce the forfeiture and have his damages for the right of way assessed as though no deed had ever been made. No question was raised as to whether the deed was valid or invalid on the grounds of public policy. The grantor was the only person who could have

raised that question, and he did not seek to avail himself of it. He had willingly parted with his estate upon an agreed condition, and when the other party violated the condition the court said that he was entitled to damages for his right of way.

Many cases have been cited to show that subscriptions of stock to railway companies, conditional on the location of the line or station, would be upheld. Although this is denied by the courts in New York, yet it is the general doctrine. (Racine County Bank v. Ayers, 12 Wis. 512; McMillen v. Maysville & Lexington R.R. Co., 15 B. Monr. 218; Henderson, etc., v. Leavell, 16 B. Monr. 358; Carlisle v. Terre Haute & Ind. R.R., 6 Ind. 316; Fisher v. Evansville, etc., R.R. Co., 7 Ind. 407; Cumberland R.R. Co. v. Baab, 9 Watts, 458; Rhey v. Ebensburg Plank R. Co., 27 Penn. St. 261; Central Turnpike Corp. v. Valentine, 18 Pick. 142; Troy, etc., v. Newton, 1 Gray, 544; Chapman v. Mad River, etc., R.R. Co., 6 Ohio. St. 119.) Such subscriptions are upheld on the ground that the agreement, and not the stock itself, is conditional. The parties subscribing are not considered stockholders until the company has performed the condition on which the undertaking depends; and when that is done, they become stockholders by force of the agreement of the parties, and the subscription becomes absolute. Of this character are the subscriptions made by counties and townships as well as individuals, providing that the road shall be located upon a prescribed line. But the conveyance proposed and sought to be enforced in this case was not in the nature of a stock subscription. Stock is subscribed and used by the company for the purposes of construction and equipment, and carrying out its legitimate pursuits. The subscribers become shareholders, and are entitled to a voice in the management of the company. But Seely did not offer to subscribe or become a shareholder. He proposed to deed the company a lot of land for speculative purposes in consideration that it would do a certain thing. There is no evidence that the land was to be used for the general business of locating, constructing, managing and using the road. But the broad position is taken that the company is a private corporation, and has the right to buy and hold all kinds of property the same as an indi-

vidual. This position is wholly indefensible. Whilst it is true, in one sense, that it is a private corporation, yet the public is deeply interested in it. Its chartered privileges and franchises were not granted solely and exclusively for private benefit and emolument, but to subserve a great public interest.

In Walther v. Warner, 25 Mo. 277, this court decided that the building of a railroad by a private corporation, under the authority of the Legislature, for the public accommodation was a public use for which private property might be lawfully taken. In all these enterprises there is a mingling of both public and private benefit, and the interests of the public are not to be sacrificed to mere private gain.

In the case of Fuller v. Dame, 18 Pick. 472, the action was on an agreement made in consideration of certain services in procuring the location of a depot at a certain place. It was a contract entered into between D. and F. and recited that D. was the owner of land which would be enhanced in value if the Boston & Worcester Railroad corporation should establish their depot on certain flats; and that, in order to procure the corporation to make such location of the depot, it would be necessary to form a joint-stock company to purchase the flats and give a portion thereof to the railroad corporation for the depot, and that F. had agreed to aid in getting up such a company, and in causing the railroad company to fix its depot on the flats, it being understood that he was of the opinion that the railroad corporation, with a view to the public good and the interests of the stockholders, ought to have its depot there; and D. agreed to make F. a pecuniary compensation so soon as the depot should be located on the place specified. A company was accordingly formed and incorporated, with power to purchase and hold the flats and to give a portion thereof to the railroad corporation as an inducement to establish the depot thereon, and an agreement was made between the two corporations by which the depot was located on the flats. F. was a member of the railroad corporation at the time when he made the agreement with D., and subsequently became a member of the joint-stock company.

Although the court had previously sustained conditional sub-

scriptions to stock, as heretofore noted, yet they held that this agreement was contrary to public policy and to open, upright, and fair dealing, because it tended injuriously to affect the public interest in having the fittest location of the depot and the interests of the two corporations, and consequently it was invalid.

Shaw, C. J., speaking for the whole court, gave the subject the following lucid exposition: "The case in question is, we think, clearly within the operation of this salutary principle. Without considering other aspects of the contract, we are of opinion that it was contrary to public policy and to upright and fair dealing, as it tended injuriously to affect the public interest in establishing the fittest and most suitable location for the termination of the Worcester railroad, for the accommodation of public travel; 2. As it affects the interests of the proprietors of the Worcester railroad; 3. As it affected the interests of the joint-stock company incorporated under the name of the South Cove Corporation. The Boston & Worcester railroad was established for the public accommodation and convenience in the transportation of passengers and merchandise. Like a country road, it was in many respects a common highway. It has been so held in case of turnpike roads. (Commonwealth v. Wilkinson, 16 Pick. 175.) It may be said that it was to be constructed and located by the corporation. True, as in the case of a turnpike road, it is constructed in the first instance at the expense of a private company of adventurers, under the sanction of the Legislature, incorporated for that express purpose, and they are to be reimbursed by a toll levied and regulated by law for their remuneration. The work is not the less a public work, and the public accommodation is the ultimate object. It is also true that it was left to the corporation and directors to fix the termination and place of deposit. In doing this, a confidence was reposed in them, acting as agents for the public — a confidence which it seems could be safely so reposed, when it is considered that the interests of the corporation as a company of passenger and freight carriers for profit was identical with the interests of those who were to be carried and had goods to be carried—that is, with the public interest. This confidence, however, could only be safely

so reposed under the belief that all the directors and members of the company should exercise their best and their unbiased judgment upon the question of such fitness without being influenced by distinct and extraneous interests, having no connection with the accommodation of the public or the interests of the company. Any attempt, therefore, to create and bring into efficient operation such undue influence has all the injurious effects of a fraud upon the public, by causing a question which ought to be decided with a sole and single regard to public interests to be affected and controlled by considerations having no regard to such interests."

The agreement in this case was to give the company an interest in town lots, provided it would locate its station at a certain specified place. It is easy to perceive how such a transaction might be perverted so as to operate most injuriously to the public. Speculators and landed proprietors, for the purpose of enhancing their property, would always be on hand to obtain locations, and forcing people to their premises, regardless of the consideration whether they were the most fit and convenient; and the companies, tempted by the prospect of gain, would accede to these propositions, and thus the general welfare and good of the public would be sacrificed to subserve mere private interests. Whilst conditional subscriptions to stock may be entirely valid, I do not think agreements of this character should be upheld.

The next question is, whether it was competent for the railroad company to hold these lots under its charter. " A corporation," says Chief Justice Marshal, " being the mere creature of law, possesses only those properties which the charter of its corporation confers upon it, either expressly or as incidental to its very existence." (Dartmouth College v. Woodward, 4 Wheat. 518.)

The same doctrine is reiterated by McLean, J., in Beaty v. Knowler, 4 Pet. 152, and is, in effect, laid down by all the elementary writers, and contained in all the American cases upon the subject. (Blair v. Perpetual Ins. Co., 10 Mo. 559; Merchants' Bank v. Harrison, 39 Mo. 433; Hoagland v. Hann. & St. Jo. R.R. Co., 39 Mo. 451; City of St. Joseph v. Saville, id. 460; Chautauque Co. Bank v. Risley, 4 Den. 485; State v. Mansfield, 3 Zabr. 510; State v. Newark, 1 Dutch. 315.) The

corporation, then, can purchase and hold land only for such purposes as are authorized by its charter.

The act of incorporation gave the plaintiff power to acquire a strip of land, not exceeding one hundred feet wide, for a right of way, and to hold sufficient ground for the erection and maintenance of depots, landing places or wharves, engine-houses, offices, machine shops, and wood and water stations; but it conferred upon it no authority to become a real estate broker or speculator in town-lots. I think the contract, so far as it proposed to invest the company with the title to the lots, was utterly void.

Something has been said concerning the lot of land on which the depot and station are situated, but that requires no particular discussion. On the plat it was dedicated for that specific purpose; the company has been in quiet and peaceable possession for nearly ten years, and so far there has been no effort to molest its possession. When an attempt is made to interrupt the enjoyment, it will then be time enough to consider the matter.

In my opinion, the judgment should be affirmed. Affirmed.