UNION PAC. R. CO. (BAUMAN v.). See Case No. 1,117.

UNION PAC. R. CO. (DILLON v.). See Case No. 3,916.

## Case No. 14,377.

### UNION PAC. R. CO v. DURANT.

[3 Dill. 343, [1] 1 Cent. Law J. 581.]

Circuit Court, D. Nebraska. 1874.[2]

RAILROAD COMPANIES—DONATION OF PROPERTY TO SECURE LOCATION—TRUST.

The acting president and active manager of a railroad company, by an oppressive exercise of his powers, procured donations of property to be made to him in trust for the railroad company. *Held*, that his action was illegal, and that it affected the company, and that the effect was that he held the property in trust for the donors, and not the company.

In equity—on final hearing. The case made by complainant, in its bill, is substantially this: That in the month of November, 1863, the Union Pacific Railroad Company, having been incorporated and organized, and being about to commence the construction of its road, and having already commenced surveys in Nebraska, at or in the vicinity of Omaha, for the purpose of ascertaining the best point for the location of its eastern terminus, and the most practicable route thence westward, certain citizens of Omaha proposed to Peter A. Dey, the engineer in charge of said surveys, to convey to Thomas C. Durant, at the date of such proposal the president and acting manager of the corporation, for its use, certain tracts of land and certain lots therein described, "said conveyance to be made conditional upon the location of the said eastern terminus within one and a quarter miles of Farnam street, thence running west from said point towards the Platte valley;" that such proposal was accepted, and the conditions performed, and that, after the performance thereof, the several parties being satisfied therewith, and being willing to convey according to their agreement, offered to make such conveyances, and such conveyances were accordingly made; but, by the express direction of Durant, his name was inserted therein as grantee and "trustee," and the said conveyances recited the receipt of the consideration thereof in full, as being "in consideration of the location of the eastern terminus of the Union Pacific Railroad at Omaha, within one and a quarter miles of Farnam street, thence running west from said point to the Platte valley;" that it was the intention of the donors to convey in trust, and that Durant took said lands and lots in trust for the corporation, it having furnished the consideration therefor, and still so holds the same, but has refused, upon request, to convey to the rightful owner. The theory of the bill is, that the lands and lots thus conveyed to Durant as "trustee," were so conveyed in trust for the complainant, and the prayer of the bill is that Durant be compelled to execute the trust and convey the property to the Union Pacific Railroad Company. The conveyances run to "Thomas C. Durant, trustee,"

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Reversed in 95 U. S. 576.]

but for whom or what he is thus trustee is not stated in the instruments, and the lands and lots do not, in most instances, adjoin the company's road, and are not necessary for its use and operation.

The substance of the answer is, that the corporation did not make the surveys for, or fix the location of, the eastern terminus or westward route of the road, but that the surveys were made at Durant's individual expense, and under his individual management and direction; that the proposed donation was intended to be made to him individually, in order to secure his influence with the president and with the corporation in establishing the terminus and route westward; that, while it is true that the word "trustee" was inserted in said deeds solely at his own instance, it was so inserted to declare a trust in favor of the grantors, in case of non-performance of the conditions of the agreement; that a portion of the lands so conveyed to him he has conveyed to the corporation, because they were necessary to its use, but that the residue he still holds; that the sole consideration of said conveyances was the location of the eastern terminus within one and a quarter miles of Farnam street, and the approval of the route westward by the president, in whom alone was vested the power to fix the terminus of or locate the route; that the condition of the contract was never complied with, and that therefore there has been a reversion to the grantors, for whom he holds, and who should be made parties to the suit, but are not. The lots and tracts of land in controversy are numerous and of great value.

A. J. Poppleton and E. Wakely, for complainant.

J. M. Woolworth, for defendant.

DILLON, Circuit Judge. The cause is before the court on final hearing. I do not purpose to refer to the voluminous proofs in detail, but to give the conclusion reached, and, briefly, the grounds of it. The conveyances were made to the defendant as "trustee." As the instruments were drawn in this form at the defendant's suggestion, and as no mistake or accident in framing them is claimed, it is plain that he does not hold the property for himself in his own right. The deeds estop him to set up such a claim, and the proofs, aliunde, show that no consideration for the conveyances moved from or were furnished by him individually. An attempt was made in the proofs to show that the property was demanded and received by him to reimburse him for the expenses of surveys prior to the completed organization of the company, but this attempt failed. It clearly appears that these expenses were made good to the defendant by the company. It is indisputable, then, that the defendant holds the property in trust, and the only question now to be decided is whether he holds it for the complainant by such a trust that it can enforce. As between himself and the railroad company, of which at the date of the transactions in question the defendant was the acting president and active manager, there is no doubt, upon the proofs, that this property was taken by him in trust for it.

The exact point upon which the cause hinges, is whether the company's right to this property is such that a court of equity will, at its instance, enforce the trust by decreeing the defendant to convey the property to it. The history of the transaction shows that the property was unfairly obtained by the defendant acting for the company—obtained under circumstances which a court of equity cannot sanction. The subscription paper is dated November 23d, 1863, and in it the subscribers "agree to convey to T. C. Durant the lots and lands severally described over their respective signatures, for the purpose of securing the location of the eastern terminus of the Pacific road at Omaha city; said conveyances are to be made conditional upon the location of said terminus within one and one-quarter miles of Farnam street, thence running west from said point toward the Platte valley, and to provide that in case of the failure of such location said lots and lands are to revert to and become re-invested in the several grantors." The act of July 1, 1862 (section 14 [12 Stat. 496]), authorized the president to fix the terminus, and the same had been fixed by him on the 17th day of November, 1863, and his action was fully known when the subscription paper of the 23d day of that month was drawn and circulated. After this paper had been subscribed, another executive order, on March 7, 1864, was made, fixing the eastern terminus on the western boundary of the state of Iowa, opposite section ten of the township in which Omaha is situate. From Farnam street to the nearest part of section ten is a mile and three-quarters. The subscribers to the agreement stipulated for a location of the eastern terminus within one mile and a quarter of that street. When all of the deeds were made to the defendant as trustee, the legal terminus as thus fixed was known to everybody, but the business terminus, that is the actual terminus, had been fixed by the company within about a half mile of Farnam street. The deeds to the defendant as trustee, none of which are dated earlier than December, 1864, recite that they are made "in consideration of the location of the eastern terminus of the Union Pacific Railroad Company at Omaha, within one and a quarter miles of Farnam street, thence running west from said point to the Platte valley," and contain no clause as to reverter. It thus appears, with reasonable certainty, that all parties had in view the securing of the actual or business terminus, and not merely the legal terminus. The other matter to be secured, was that the road should run westwardly from Omaha, that is, not to a rival

place—Florence on the north, or Bellevue on the south, so as to leave "Omaha on a switch," as one of the witnesses phrases it, and although the route of the road was somewhat changed, it was not changed in the interest of either of those places, or to the detriment of Omaha.

Assuming, though not deciding, that the company has the capacity in law to acquire and take property like that in question, not on the line of its road nor shown to be necessary for its operations, I should be of the opinion, that if the subscriptions under the contract of November 23, 1863, were fairly obtained for a lawful purpose, the defendant would be bound to convey the property to the company. And in this view the whole case lies within the inquiry, was the property fairly or lawfully obtained? In my judgment it was not. There is no satisfactory evidence that this property was demanded by the company, or by Mr. Durant, acting for it, to reimburse it for the additional expense which a terminus at Omaha, instead of at Bellevue or Florence, would involve. Besides, after March 7, 1864, it was impossible for the company, if acting in good faith, not to construct and operate its road to Omaha, and it was after this date that all of the deeds to the defendant were made. Whether an agreement to donate lands in consideration of the location of the depot or business terminus of a railroad can be supported by law, we need not enquire. See Fuller v. Dane, 18 Pick. 472; Pacific R. Co. v. Seely, 45 Mo. 212. I am not prepared to say, that if a company has by law a discretion to adopt its own line and to go to any point its interest might suggest, and it is induced by offers of pecuniary advantages to adopt a more expensive line to another terminus, that such a transaction would necessarily be against public policy, or fall within the principles of the cases above cited. The facts of this cause present no such question, and I do not enter upon its consideration or give any opinion concerning it.

How these subscriptions were obtained, appears from the testimony; and they seem to have been extorted from the subscribers by reason of the powers which the law had conferred upon the company to be exercised for the public good, and not oppressively. The origin of the demand upon the people of Omaha clearly appears from the testimony of Mr. Dey, the confidential employé of Mr. Durant, and subsequently of the company, and who is a gentleman of high character. He testified that "the demand for these lands came from Mr. Durant." Mr. Dey thereupon caused Mr. Durant's demand to be communicated to leading citizens of Omaha. He says: "I did not circulate the paper (of November 23) but was in constant communication with those who did circulate it, and made many suggestions to them, with the view to aid them in getting the subscriptions filled out." He is asked "for what

purpose the lots and lands was to be applied," etc., and his answer is: "The demand for those lands came from me, and the purpose avowed was to influence parties who might be of service to the road and of service in making Omaha the terminal point. Durant said he must have the deeds made to himself as trustee, that he might dispose of the lands without being answerable to any party, and that I stated to Mr. Aug. Kountz (an active citizen in circulating the papers of November 23, 1863) and other parties who were instrumental in procuring the donations." Again Mr. Dey testifies, "I wish to be understood as saying that one of the reasons avowed (why the citizens must give property) was that their donation could be used for that purpose," i. e., "to influence parties who might be of service in making Omaha the terminal point. I avowed that the parties controlling this matter (to-wit, Mr. Durant) had the power to procure such donations of lands as they wanted at the terminus of the road, and they expected to use it, and that I conceived it to be the policy of Omaha to donate what was asked of them. Mr. Durant at that time controlled the whole matter." Mr. Durant was absent and Mr. Dey was his representative. Public meetings were held, and the citizens given to understand that they must donate lots and lands liberally, or else Bellevue or Florence might secure the prize of the terminus; and when the subscriptions were made it is evident that it was done out of fear that Mr. Durant would, or might, otherwise use his power against Omaha, and that these donations (which one subscriber considered a species of "black mail," another as a "corruption fund") would have the effect to conciliate his favor and secure his influence. If Mr. Durant intended to use this property to corrupt the official action of others, it was obtained for an unlawful purpose. If he demanded the property not for this purpose, but because he had the power and intended to exercise it, his action is oppressive and cannot be permitted to stand. And as the company in this suit seeks the fruits of Mr. Durant's acts, they are affected through him with the vice of Mr. Durant's conduct.

My judgment is that the subscriptions to the paper of November 23, 1863, pursuant to which the conveyances were subsequently executed to the defendant, as trustee, were secured by an illegal and oppressive exercise and use of the powers which belonged to the defendant's position as the acting president, and active, and at that time almost the sole, manager of the company, and consequently a court of equity will hold the defendant as trustee for the donors, although he may have intended to take the lands and lots as trustee for the company. Accordingly, a decree will be entered dismissing the bill, except as to the tracts conveyed to him by Enos Lowe, and

which he admits in his answer to be held by him in trust for the complainant.

[Reversed on appeal to the supreme court. 95 U. S. 576.]

UNION PAC. R. CO. (FISK v.). See Cases Nos. 4,827–4,830.

UNION PAC. R. CO. (FORT v.). See Case No. 4,952.

UNION PAC. R. CO. (FROST v.). See Case No. 4,952.

UNION PAC. R. CO. (HALL v.). See Case No. 5,950.