Parker v. Thomas.

*Richard W. Thompson*, for the appellees.

------ ◆◆◆ ------

## PARKER v. THOMAS.

Where the rights of a corporation are derived from a public law, the fact that the agents of the corporation, in order to induce others to contract with it, or subscribe to its capital stock, made false and fraudulent representations to them as to its rights, constitutes no bar to an action on such contract or subscription.

Where a subscription is made to the capital stock of a railroad company, upon the express condition that the road shall be located within a certain distance of a specified place, such condition will be construed to be a condition precedent; and the giving of unconditional notes for such subscription, unless so intended by the parties, does not waive the performance of the condition precedent; and the failure of such performance may be pleaded in bar of a recovery on such notes.

Where an answer consists of several paragraphs, and a single demurrer is filed thereto, in which the plaintiff says "he demurs to *each* paragraph of the answer," etc., the demurrer must be taken distributively, and is equivalent to a separate demurrer to each paragraph, and may, therefore, be overruled as to part, and sustained as to part of the paragraphs.

APPEAL from the *Shelby* Common Pleas.

WORDEN, J.—This was an action by *Parker* against *Thomas,* upon promissory notes executed by the latter to the *Fort Wayne and Southern Railroad Company,* and by the company indorsed to the plaintiff. The notes bear date December 29, 1853.

The defendant answered in four paragraphs, in substance as follows:

1. That, on the —— day of August, 1853, he subscribed for sixteen shares of the capital stock of the railroad company, on the following conditional subscription, viz.: "We, the undersigned, promise to pay to the president and directors of the *Fort Wayne and Southern Railroad Company* twenty-five dollars for each share of stock set opposite our names, as follows, to-wit: four per cent. in sixty days, and the balance in six semi-annual payments, *provided* that said road is located within one-fourth of a mile of the plat of the town of *Westport,* in *Decatur* county, *Indiana;* and when said road is so located, we authorize the agents of the company to transfer our names and stock into the regular stock book of the company;" that afterward, on the 9th of

December, 1853, he paid the four per cent. on the subscription, and gave his notes for the balance, which are the notes now sued upon; that at the date of the subscription of the stock, and of the execution of the notes, he was a resident of *Decatur* county, and the owner of real estate therein, and desirous of having the road located and constructed through said county; that the charter of the company contains the following provision: [here follows a provision in the charter of the company which it is unnecessary to set out in this opinion;] that the company, through her agents and servants, in order to induce the execution of the subscription and the notes, falsely, etc., represented that the company had a right to construct a railroad from *Muncietown* to *Jeffersonville*, passing through *Rushville*, *Greensburgh*, and *Westport*, in *Decatur* county, *Vernon*, in *Jennings* county, thence to *Jeffersonville*; and that said towns of *Rushville*, *Greensburgh*, *Vernon*, and *Jeffersonville* had been fixed upon as the route, and that these had been determined upon as the points through which the road would pass, and that *Jeffersonville* had been fixed upon as the southern terminus of the road, by a resolution of the board of directors; that said representations were false, and known to be so by the agents and servants of the company; that by the charter of the company she had no right to locate and construct a road from *Muncietown* to *Jeffersonville*; that on the 5th of October, 1853, the company fixed upon and located the southern terminus of the road at *Columbus*, in *Bartholomew* county, by a resolution of her board of directors, which resolution is set out; that said defendant, at the time, etc., was ignorant of such location, which would make it impossible for the company to make *Greensburgh* and *Westport* points, and *Jeffersonville* the southern terminus, in accordance with the representations; also, that there never was a legal location of the southern terminus of the road at *Jeffersonville*.

2. That the defendant subscribed for stock and gave the

notes as set forth in the first paragraph; that the company, by her agents and servants, in order to induce the execution of the notes, falsely, etc., represented to the defendant, in a public speech, made at the *Methodist Church* in *Westport*, that the company was amply able to build the road; that she had stock already subscribed sufficient to do so, and that the final completion within three years was a fixed fact; that the stock would pay heavy dividends, and be the best investment the defendant and others present at the meeting could make; that the subscription in *Decatur* county should be used in the construction of the road through that county, only, and would not be called for until the work was progressing; that if the people of *Decatur* county would subscribe a small amount more to make up their quota, the middle division would be put under contract during the coming winter; all of which representations were false, and known to be so by said agents and servants; that at the time, etc., the defendant lived in a secluded and retired portion of the county, and was ignorant of the means and prospects of the company; that at the time, etc., the company had not the means to construct the road, and is now insolvent, and has abandoned the construction of the road.

3. That at and prior to the time of the subscription, the defendant was the owner of a large amount of real and personal property, at and near the town of *Westport*, and engaged in the mercantile business at said town, which property would be greatly enhanced in value, and which business would be greatly improved and promoted by the construction of a railroad through or near said town; that about the time of the subscription the company caused her agents to go over said county of *Decatur*, among the people, in different directions, which agents falsely and fraudulently represented that the railroad passing through, etc., near said town of *Westport*, would be speedily constructed, if the

people of the county of *Decatur* would take hold and sub-scribe stock to take the same through said county; that the company had ample means to construct and furnish the road, already subscribed; that it would be finally completed in three years; that it would be, in a very short time, located and put under contract from *Muncie*, in *Delaware*, to *Vernon*, in *Jennings* county; that said agents held meetings in *Westport* and other places in the county, which defendant attended, where said agents repeated, in the strongest terms, the aforesaid false representations as to the ability of the company to construct and put in operation their road, and that she would forthwith proceed to locate and put the same in operation between said points; by means of which etc., the public was excited and amazed, and made to believe that the company had the ability, and would so locate and construct the road. The defendant, relying on said false representations, and believing the same to be true, sub-scribed to the capital stock of the company, as set forth in the first paragraph of the answer. And afterward, on, etc., the said company, by her agents repeating said false repre-sentations, and representing that it would be to the interest of the company to close up said subscription by giving a note for the amount thereof, and would not injure the defendant, as the company had ample means, and would immediately go to work and locate, and let the work on the central division of the road, and construct the road, as soon as the same could be done, with reasonable diligence; and that the same would be complete, within three years, within one-fourth of a mile of said town of *Westport*, according to the conditions of the subscriptions, and that, if the defend-ant and others did not close up their subscriptions, the books of the company would be closed, and they would not be permitted to take said stock; and that the notes, when given, would be applied exclusively to the construction of the road through said county of *Decatur*, the defendant,

relying upon all of said false and fraudulent representations, and believing the same to be true, made and executed the notes on which the suit is brought, for no other or different consideration; that the company has not located or constructed the road within one-fourth of a mile from *Westport*, nor at any other place within or through said county; that the said company had not, at the time when, etc., nor has it yet, the means subscribed to construct said road, but has been and is insolvent; all of which representations were false, and known to be so by said agents, when they were made.

4. That the defendant was the owner of property, and engaged in the mercantile business, as in the last paragraph set forth; that, in order to aid in the construction of the road which was to run through or near said town of *Westport*, he made the ·conditional subscription set out in the first paragraph; that afterward, on the 1st of December, 1853, the company, by her agents, falsely and fraudulently represented that she was amply able to go on and locate and construct said road, and complete the same in three years, and that she was about to, and would forthwith proceed to construct the same through the county of *Decatur*, and within one-fourth of a mile of *Westport*, according to the terms of the subscription, and that to enable her to do so, it was important and necessary, and that it would be better that said defendant should give his notes for the amount of his subscription, that the same might be applied to the construction of the road through said county; and the defendant, confiding in these representations, and believing them to be true, and being ignorant of the facts, executed the notes described in the complaint; that the company has not yet located or constructed her road within one-fourth of a mile of the plat of the town of *Westport*, or at any other point near said town, and, at the time, was not about to proceed, etc.; that said company was, at said time, entirely unable to

construct said road, etc.; that she had not the means to construct the same, and that she has since wholly abandoned said route; that she has not performed any work thereon between the town of *Muncie,* in *Delaware* county, and *Vernon,* in *Jennings* county, and does not intend to do so; that at the time of making the false representations, the company had no intention of locating or constructing her road within one-fourth of a mile of the town of *Westport,* or at any other point running through said county, but knowing that unless said defendant could be induced to believe that the road would be speedily located and constructed, and that the company had the means to locate and construct the same as aforesaid, he would not give his said notes, the company made said false and fraudulent representations to deceive and defraud him, wherefore, etc.

A demurrer was overruled to each paragraph of this answer, and the plaintiff excepted. Issues were formed and tried, resulting in a verdict and judgment for the defendant.

Were the several paragraphs of the answer good? This is the question that first claims our attention.

The allegation in the first paragraph, that the company falsely represented that she had a right to construct a road from *Muncie* to *Jeffersonville,* adds nothing to the other facts therein stated. That representation was upon matter of law. Whether the company had such right depended upon her charter, which was a public law, and of which the defendant was bound to take notice.

The other allegations in the several paragraphs, of representations in respect to the ability of the company to construct the road, and the time within which it would be done, etc., are not sufficient to avoid the contract. The case of *Bish* v. *Bradford,* 17 Ind. 490, is decisive upon these questions.

The first paragraph alleges that the company had, by resolution, fixed upon *Columbus,* in *Bartholomew* county, as the

southern terminus of the road, thereby rendering it impossible to make *Greensburgh* and *Westport* points, etc.

The third alleges that the company had not located or constructed the road within a fourth of a mile of *Westport*, etc.

The same allegation is to be found in the fourth. Outside of these allegations, none of the paragraphs set up matter which is a valid defense.

The second paragraph is clearly bad, for the double reason that the representations are not such as to bar the action, and it is not alleged that the defendant believed them, or relied upon them, or that his subscription was, in any degree, induced by them.

Returning now to the first, third, and fourth paragraphs, the question arises: Whether they were good, in consequence of the allegations denying the location of the road as provided for by the terms of the subscription? The original subscription was upon the condition that the road should be located within one-fourth of a mile of the plat of the town of *Westport*. This, we think, was a condition precedent. *Taylor* v. *Fletcher*, 15 Ind. 81. Had the suit been upon the subscription, it is clear enough, on general principles, that no recovery could be had without showing that the road had been located as provided for in the subscription. Did the giving of the notes waive the condition? The notes were six in number, and unconditional, each for the amount of the semi-annual installments, and coming due semi-annually, corresponding with the terms of the subscription. In this respect, the case differs materially from that of the *Evansville, etc. Railroad Company* v. *Dunn*, 17 Ind. 603. We are not prepared to say that the giving of the notes waived the condition. No doubt, if it was the intention of the parties to waive the condition, effect should be given to such intention; but the facts, as shown, do not, of themselves, amount to such waiver. It seems to follow that the paragraphs, except the second, were good.

Parker *v.* Thomas.

Should the cause be reversed because of the overruling of the demurrer to the second paragraph? Here arises a question of practice. The demurrer was as follows: "The plaintiff demurs to *each* paragraph of the answer," etc. The appellee insists that the demurrer was properly overruled if there were any good paragraphs. We think, however, that the demurrer should be taken distributively, and that it is equivalent to a separate demurrer filed to each paragraph. It might well be overruled as to some and sustained as to other paragraphs. It is not like a demurrer that must be *wholly* sustained or overruled.

If the evidence is not to be deemed in the record, and counsel for the appellee claim that it is not, then the judgment must be reversed for the error in respect to the second paragraph, for, in that case, we can not say that the verdict for the defendant was not based upon the defense set up in that paragraph; we can not say that the merits of the cause have been fairly tried and determined. *Rose* v. *Wallace*, 11 Ind. 112. A bill of exceptions sets out evidence, but the thirtieth rule may not be strictly complied with. If we take it that the evidence is all in the record, it shows that the road was located as provided for in the subscription. That it was not so located, we have seen, was the only valid defense set up. This defense, the proof in the record shows, did not exist. If the evidence be deemed in the record, a motion for a new trial, which was properly made, should have been sustained. So that, whether the evidence be or be not in the record, the judgment must be reversed.

A cross error is assigned. The plaintiff, for a reply to the alleged location of the southern terminus of the road at *Columbus*, etc., alleged, that afterward, by a resolution of the board of directors, the company rescinded the former order, and ordered that the road be located on a line passing through *Greensburgh*, *Westport*, and other points, termina-

ting at *Jeffersonville*, etc. To this replication the defendant demurred, but the demurrer was overruled, and the defendant excepted. It is claimed that herein the Court erred. The position assumed is, that as the company had power, by her charter, to fix upon the southern terminus of her road, and had exercised that power by fixing it at *Columbus*, the power was exhausted and the location could not be changed. Whatever might be the law, where no statutory authority is given to make a change, we think the charter of the company gave her the right to make such change. The thirty-first section of the charter seems, by necessary implication, to confer the right to make such change. Local Acts, 1849, p. 355.

*Per Curiam.*—The judgment below is reversed, with costs, and the cause remanded for further proceedings.

*B. W. Wilson*, for the appellant.

*James Gavin*, *Oscar B. Hord*, and *Cortez Ewing*, for the appellee.

Note.—There were contained, by agreement, in the same record in which the above entitled cause is found, twelve other causes, all of which are so nearly alike, in every essential particular, as to render the foregoing decision applicable to each, and the same judgment was therefore entered in each.