### PERKINS ET AL. *v.* WRIGHT.

CARRIER.—*Baggage.—Porter.*—The price paid by a passenger on a steamboat usually includes the charge for the transportation of his baggage; and as the carrier must provide some one to care for it, that person is the agent of the carrier, although he be not one of the crew or paid by the carrier, but a porter, who receives his compensation from the passenger.

PARTIES.—*Minor.*—A minor may, by his next friend, maintain an action against a carrier for the value of clothing or other property given to him by his parents or others, and lost by the defendant.

APPEAL from the Vanderburg Circuit Court.

DOWNEY, J.—The appellee sued the appellants, the owners of the steamboat Mollie Norton, as common carriers, for the value of a carpet sack and contents, which, it is alleged, were shipped at Henderson, Kentucky, to the plaintiff at Evansville, in this State, and never delivered.    The complaint commences, "Prince A. Wright, an infant, who sues by Edward H. E. Wright, as next friend, complains," etc.    The second paragraph commences thus:   "The said plaintiff further complains of the said defendant," etc.

The first paragraph states that the defendants promised in consideration that the plaintiff delivered to the said defendants the goods; and the second paragraph alleges that they promised in consideration of a reasonable reward, to be paid by the plaintiff. The defendants demurred to the first and second paragraphs of the complaint, for the reason that neither of them stated facts sufficient to constitute a cause of action. This demurrer was overruled, and the defendants excepted. This is the first error assigned. We need not stop to consider whether the first paragraph is defective, as contended by counsel for the appellants, or not; for conceding that it is, and that the second is good, as is admitted, we must hold that the demurrer was a demurrer to both, and was properly overruled if either paragraph was good. This is not like the cases where the party demurs to each paragraph in a complaint, answer, or reply, and where it has been held that the demurrer may be taken distributively, and sustained to some and overruled as to others, as in *Fankboner* v. *Fankboner*, 20 Ind. 62; *Parker* v. *Thomas*, 19 Ind. 213.

The introductory part of the complaint was sufficient to show that the plaintiff sued by his next friend; and the commencement of the second paragraph must be held, by reference to the first, to be sufficient also in this respect.

The remaining question in the case is as to the sufficiency of the evidence to sustain the finding of the court, which arises out of the motion for a new trial in the court below, and the refusal of the court to grant the same, which refusal is assigned for error.

It was admitted at the trial of the cause that the defendants were the owners of the steamboat Mollie Norton, and that they were common carriers, as alleged in the complaint.

It was also admitted that by depositions taken and lost it sufficiently appeared that a carpet sack belonging to the plaintiff had been sent from Madisonville, Kentucky, to the wharfboat at Henderson, Kentucky, to be sent from there by boat to plaintiff, at Evansville, Indiana, about the time the goods mentioned in the complaint are alleged to have been lost.

The plaintiff, Prince A. Wright, testified as follows: "I was the owner of the carpet sack, sent from Madisonville, Kentucky, as admitted at the beginning of this trial; it was the same as this suit was brought for; it was a carpet sack, containing clothing, papers, and books, as specified in the bill of particulars with the complaint; the articles were worth the money charged for them in the bill of particulars; I was the owner; my father paid for them; I had no money of my own; had never been in business for myself; was a minor and lived with my parents; my father paid the price for said articles, as shown by the bill of particulars; they were all as good as new."

Cross examined. "I had worn the shirts two or three times; there was a new suit, consisting of the doeskin pants, seventeen dollars, blue frock coat, thirty-five dollars, and the satin vest, twelve dollars and fifty cents, which had never been worn; these were in a box, and not in the carpet sack; the balance were in the carpet sack; the sack coat had been worn considerable, also the hat; I had gone over to Madisonville to get into business, but failed to get the place, and came back home, and ordered my clothing sent back to Evansville to me; the clothing has been lost, and I have never seen it since; I left it at Madisonville, Kentucky; I am now a few weeks over twenty-one years old."

E. H. E. Wright testified as follows: "Plaintiff is my son; I live in Evansville, Indiana; I bought and paid for the articles mentioned in the complaint for my son, and paid the price shown in the bill of particulars; I bought them for my son and gave them to him; he was going to Madisonville, Kentucky, to get into business; he went over, but was disappointed and came back home; the clothing belonged to the plaintiff; the defendant, Perkins, admitted that the carpet bag had been on his boat; I went down to see him on the Mollie Norton, and he said he believed the porter had stolen the clothes; he said the men at the wharfboat at Henderson had told him that they gave it to the porter of the Nor-

ton; the goods have been lost and never delivered to the plaintiff."

Cross examined. "I paid for the goods; I always pay for my children's clothing who are under age; the plaintiff was a minor, had been living at home, had never been in business for himself; I gave him his clothing just as I did to my other children, except that he had better clothes, because I had sent him from home to college. When I first went to the Norton to see about the goods, Perkins declared that he knew nothing about them, and they were not on the boat, and he had no knowledge of them; told me to wait and he would make inquiry about them; I saw him a few days after, and he admitted that my son's carpet sack had been on the boat, but said he could not find it; believed his porter had stolen it; he sent for my son to come down and see whether the pants which his porter was wearing were his pants; he never admitted that it had been received or properly delivered on his boat, but admitted that it had been on his boat, and he believed his porter had stolen it."

Nathan Groves, a witness for defendants, testified: "I am a clothing merchant in Evansville; clothing which has been worn two or three weeks would not be worth more than twenty-five to fifty per cent. of cost price; no satin vest is worth twelve dollars and fifty cents; from six to eight dollars is a good price for a good satin vest."

Cross examined. "Clothing worn two or three weeks would be worth more than twenty-five to fifty per cent. of cost price to the owner, but would not bring more than that if put up for sale. Shirts worn but twice would be worth about as much to the owner as when new."

Charles G. Perkins. "I am one of the defendants to this action; I was the master of the Mollie Norton at the time referred to; do not think that I ever admitted to Mr. Wright that the goods were on my boat; I have no recollection whatever of making any such admission; I am certain that I never admitted that they were delivered on my boat, or received by any officer having authority to receive them; there were

no facts upon which I could make such an admission; when Mr. Wright first came to the boat, I told him I knew nothing about them, and never had heard of them; I looked at the freight book in which all freight is entered, and could find nothing of it; I told Mr. Wright to come down again, and in the meantime I would make inquiry about it; I looked through the boat, looked into every state room, and made diligent inquiry, and could never find or learn that the goods had been on my boat; I may have told Mr. Wright, that I had suspicions that my porter had stolen them, and think I told him something of that sort, and sent for his son to come down and see whether the pants my porter had on were his pants, but am certain that I never made any other admission than might be implied from that. Porters have no authority whatever to receive freight; that is the business of the master or clerks; porters take charge of passengers' baggage, black boots for passengers, etc., but they get their pay from passengers, whatever they see fit to pay them; they are not hired by the boat and do not belong to the boat's crew; they get their meals for helping to wait on the table, tending to the fires in the cabin and for sweeping out the forepart of the cabin. Porters, also, sometimes carry small packages for persons not on the boat, but in such cases they have no authority to receive them for the boat. The boat receives no compensation in such cases; the officers take no notice of it, and are not supposed to know anything at all about it. Any compensation for such services is paid by the owners of the package, and the boat has nothing to do with it. I have always told my porters not to carry any packages, and if anything except baggage of a passenger is brought on my boat, it should go as freight and a bill of lading should be given. The porters have the entire charge of all baggage on board, and the officers pay no attention to baggage."

Volney Screnson. "I was clerk on steamboats in the trade here about Evansville for about eight or ten years; I am now in the office of the surveyor of customs for the port of Evansville, or deputy surveyor of customs; I know that porters of

steamboats have no authority whatever to receive freight; they look after the fires in the cabin, black passengers' boots, and take care of passengers' baggage; they do not belong to the crew of the boat. In my present employment I see all returns of steamboat crews, made to the surveyor of customs, which have to be made for the purpose of collecting dues, for marine hospital. In these returns porters of boats are never included, and porters are not entitled to be treated or cured in the United States Hospital, as all members of a boat's crew are. Porters sometimes carry small packages for persons not passengers, but in such cases the steamboat receives no compensation for it, the officers take no notice of it, and in most cases know nothing at all about it."

Cross examined. "When porters carry small packages they receive some compensation, but it is from the owner of the package, and not from the owner of the boat, and the boat has nothing to do with it. The porters get their pay from the owners of packages and baggage."

Allen J. Duncan. "I have been steamboating about Evansville for a good many years; am now master of the steamer Sam Orr; I know the position and duties of porters on a boat; they take charge of passengers' baggage, black boots, attend to fires, etc.; they receive no pay from the boats, nor do they belong to the boat's crew; they have no authority to receive freight for the boat; that is the business of the master and clerks. Sometimes porters carry small parcels from place to place for persons not passengers, but the boat has nothing to do, with it, and receives no compensation in such cases; it is generally done without the officers of the boat knowing anything about it; they have no authority to receive anything for the boat unless it is passengers' baggage; they have charge of that.

Cross examined. "When porters carry small parcels from place to place for persons not on the boat, they get their pay from the owners of the parcels. The porters have charge of all baggage."

A. J. Hutcheson, master of the steamer D. Newcomb, and

Lee Howard, master of the steamer Florence Lee, being present as witnesses, it was admitted by plaintiff that they would testify concerning the duties and relations of porters substantially the same as the foregoing witnesses had done. And this was all the evidence given in the cause.

Several objections are urged against the sufficiency of this evidence to sustain the finding of the court. It is insisted, in the first place, that, conceding that the court might, from the evidence, have found that the goods went into the hands of the porter on the steamboat, still it does not sufficiently appear that he was authorized to receive the same, and if he did receive them, that this did not bind the carriers or make them liable for their delivery to the owner.

It is very clear that to bind the carrier for the safe carriage and delivery of the goods, they must be delivered to him or to his authorized agent; they must come to his possession. Chitty Carriers, 26; *Ford* v. *Mitchell*, 21 Ind. 54.

It is not usual for a passenger to pay for the transportation of his baggage separate from what is paid by him for his own transportation. What he pays for his own carriage includes also pay for the carriage of his baggage. In this instance, however, the owner of the baggage was not on the boat, and therefore a compensation for the carriage of the baggage would be impliedly due to the carrier for the transportation thereof, and this is true whether the goods be denominated baggage or freight. In either case there must have been a delivery to the carriers, or to their agent or servant, to make them responsible. The appellants seem to concede, and we think must concede, that the porter was their agent and servant in the receipt of the baggage of passengers on the boat, and in the care and delivery thereof. As they are bound to transport the baggage of passengers, as well as the passengers, they must provide some one to take charge of it, and this person must be held to be their agent.

As we are not quite agreed whether or not, under the circumstances shown, the porter was the agent of the carriers

to receive the goods in question, we leave that point undecided.

Second. It is contended that the father, and not the son, should have brought the action. The reason assigned for this position is, that the plaintiff was under age, and that the goods were purchased by the father and given to the son. There is nothing in this. A minor can own property which has been given to him, whether by his father or by some other person.

Third. The next point made is, that the damages are excessive. The value of the sack and contents, as set out in the bill of particulars, is one hundred and thirty-five dollars and seventy-five cents. The judgment was for one hundred and nineteen dollars and thirteen cents. We think the court allowed this amount as the value of all the articles in the bill of particulars. But the plaintiff testified that the doeskin pants, seventeen dollars; blue frock coat, thirty-five dollars; satin vest, twelve dollars and fifty cents; making sixty-four dollars and fifty cents, were in a box, and not in a carpet sack. There is no charge in the complaint of the shipment or loss of any goods in a box, nor does the evidence show that any box of goods was sent from Madisonville or shipped on board the boat at Henderson.

Leaving out the value of the clothing shown to have been in the box, the judgment below is too large by whatever the court found to be the value of those articles.

The judgment is reversed, and the cause remanded.

*S. R. Hornbrook*, for appellants.

*J. M. Shackelford* and —— *Williamson*, for appellee.