JANE P. CAMPBELL, APPELLEE, V. MISSOURI PACIFIC RAILWAY COMPANY, APPELLANT.

FILED MARCH 7, 1907.   No. 14,531.

Carriers: LOSS OF BAGGAGE: NEGLIGENCE: PRESUMPTIONS. The Missouri Pacific Railway Company had been in the habit for some years of stopping all of its passenger trains to discharge passengers and their baggage at the station of the Union Pacific Railway Company in South Omaha, over a part of whose lines it operated its trains, and it had been the custom of the agent of the Union Pacific Railway Company to remove and care for the baggage coming from all Missouri Pacific passenger trains the same as for that coming from Union Pacific trains, except that all checks on baggage coming from the Missouri Pacific trains were taken off before the baggage was removed from the train. A portion of the baggage of a passenger reaching South Omaha on the Missouri Pacific train in the evening was placed in the baggage room at the Union Pacific station by the agent, accord-

ing to the usual practice. When it was called for in the morning it could not be found. *Held*, First, that the agent of the Union Pacific Railway Company was the agent of the Missouri Pacific Railway Company in the receipt and care of such baggage; second, that the liability of the Missouri Pacific Railway Company was that of warehouseman; and,.third, that, since no explanation was given of the loss of the baggage, the presumption arises that the bailee was guilty of negligence.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*John F. Stout, J. W. Orr* and *B. P. Waggoner,* for appellant.

*A. C. Pancoast,* contra.

LETTON, J.

The defendant operates a line of railroad from Kansas City, Missouri, to Omaha, Nebraska. For a short distance before entering the city of Omaha it uses the tracks of the Union Pacific Railway Company, this portion of the line passing through South Omaha, and for several years prior to September, 1903, the defendant had been in the custom of using the passenger station of the Union Pacific Railway Company in South Omaha as a stopping place to receive and discharge passengers and their personal baggage. The plaintiff, at that time, desiring to travel to South Omaha from Kansas City, Missouri, went to the station of the defendant at that point and asked for a ticket to South Omaha. She was given a ticket to Omaha, but nothing was said with reference to the ticket being to that point. She then went to the baggage room and asked to have her baggage, consisting of a trunk and a valise, described by her as a "large telescope," checked to South Omaha. She was there told by the baggageman that he could not check her baggage to South Omaha, but would check it to Omaha, and that she could give her checks to the conductor upon the train, who would have it put off for her at South Omaha. She

followed these directions, and gave her checks to the con-
ductor. When she alighted from the train at South
Omaha she was met by her husband. Her baggage was
taken off the train and placed upon a truck, where she saw
it when she alighted and pointed it out to her husband,
who asked the baggageman if he thought he could get an
expressman to deliver the baggage that night, and was told
there was none about the station; that they could get one
up town, but would have to pay extra at that time of
night. They pointed out to the baggageman the trunk
and telescope, and called his attention to the fact that the
name was on the end of the telescope. Mr. Campbell then
said that they would get it Sunday morning, or send for
it Sunday morning. The baggageman then said: "I will
put it in the baggage room." Campbell said: "All right."
The baggage was then placed in the baggage room. The
next morning when it was sent for by Mrs. Campbell,
the trunk was delivered, but the valise could not be found.
It is for the value of this valise and its contents that this
action is brought.

The defense to the action is in substance that, by the
delivery of the checks to the conductor and the taking of
the baggage from the train, it was delivered to the plain-
tiff, and that whatever was done with respect to it by the
agent or baggageman at the South Omaha station was
done at the request and for the benefit of the plaintiff,
and without the knowledge, consent or privity of the Mis-
souri Pacific Railway Company; that the station and
baggage room at South Omaha are the property of the
Union Pacific Railway Company and not of the defend-
ant; and that that company is not the agent of the de-
fendant. The plaintiff, in reply to this defense, alleges
in substance a custom on the part of the conductor on
the train and of the agent of the Union Pacific Railway
Company at South Omaha to discharge baggage from the
defendant's trains, and to care for, handle and take com-
plete control of the same as the agents of the defendant.

34

It was shown by the testimony of Cook, the night agent of the Union Pacific Railway Company at South Omaha, that all passenger trains of the Missouri Pacific Railway Company stop at the Union Pacific station in South Omaha; that the baggageman at the station is generally in the habit of standing in the baggage room door, and "the baggageman in the train as it goes by puts up his fingers, indicating two or three or four pieces of baggage to be taken off," and the station baggageman then gets the truck and takes it up to the train for the baggage. Cook testifies that he took this baggage off the train; that there was more than one truck load at this time; that he always took a truck to get the baggage from the Missouri Pacific trains, the same as he did all other trains; that it was part of his duties to go out with the truck and get the baggage and wheel it back to the baggage room, unless the passenger that owned it came and took it away at once. He testified as follows: "Q. If they did not, about how long do you keep it when it comes in on the Missouri Pacific Railway? That is, how many hours would you keep it in storage there in the baggage room? A. Well, sir; the first 24 hours, except when the baggage comes in on Sunday, it is free. The first 24 hours after that it is 25 cents, and 10 cents for every 24 hours or fraction up to 30 days. Then it is sent to the general baggage master of the road." It appears, further, from this witness' testimony that this baggage was treated in the same manner as all other baggage coming in from the Missouri Pacific road under similar circumstances.

The court instructed the jury as follows: "You are instructed that under the evidence in this case the liability of the defendant, if any, is that of warehouseman only, and to entitle plaintiff to recover you must find by a preponderance of the evidence, first, that the baggage sued for was not delivered to plaintiff nor to anyone authorized by her to receive it; second, that the general and usual course of dealing on the part of the defendant company in the handling of baggage at the station of the

Union Pacific Railway Company, used by defendant at South Omaha, was such as to make the baggagemen and employees employed at said station the agents of the defendant company in retaining possession of plaintiff's baggage, if you find defendant did retain possession thereof, and in placing the same in the baggage room of said station; and, third, that the loss of said baggage was caused by the want of ordinary care on the part of such agent or agents of the defendant company." We think this instruction fairly submits the question at issue to the jury and is fully as favorable to the defendant as the circumstances warrant. *Mote v. Chicago & N. W. R. Co.*, 27 Ia. 22; *Chicago, R. I. & P. R. Co. v. Fairclough*, 52 Ill, 106. The evidence fully supports the verdict as to the nondelivery of the baggage and the custom of the defendant with reference to the handling of baggage at the station used by it at South Omaha. As to the third point in the instruction, when the plaintiff proved the receipt of the property by the defendant as warehouseman, her demand for it, and the neglect and refusal of the defendant to deliver the same, the presumption arises, in the absence of any explanation whatever, that the defendant was guilty of negligence, and the burden was upon the defendant to exonerate itself by showing that the goods were lost without the lack of ordinary care on its part. 3 Thompson, Commentaries, Law of Negligence, sec. 3453. It is neither pleaded nor proved that ordinary care was exercised in the preservation of the property, or that it was lost or taken from the defendant's possession without negligence on its part. In this respect the case is similar to *Sulpho-Saline Bath Co. v. Allen*, 66 Neb. 295.

Mrs. Campbell had a right to rely upon the usual practice and custom as to the receipt and care of baggage at South Omaha coming from defendant's trains, and upon the appearance of authority which, either tacitly or by the acts of its agents upon the train, it had conferred upon the station agent to act for it in that behalf. When the agent offered to place the baggage in the baggage room

until the next morning, and the plaintiff accepted the offer, he was acting in behalf of the defendant, and its liability as warehouseman became fixed. *Farmers & Mechanics Bank v. Champlain T. Co.*, 23 Vt. 186; *Ouimit v. Henshaw*, 35 Vt. 605. In the latter case it is said: "A passenger, arriving with baggage by cars at a railroad station, is justified in regarding the man who handles and takes charge of the baggage on the arrival of the train, as the agent of the railroad company which has brought the passenger there." See, further, *Jordan v. Fall River R. Co.*, 59 Mass. 69; *Perkins v. Wright*, 37 Ind. 27.

The verdict of the jury seems to be fully supported by the evidence, and the judgment of the district court is therefore

AFFIRMED.